SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

|  |  |
|---|---|
| JOHN ROBBINS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 02-10453 |
| v. ) | Judge Mary A. Terrell |
| ) | Calendar No. 5 |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF DAVID MALONEY

I, David Maloney, declare and state as follows:

1. I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

2. Since June of 1985, I have been employed as an architect and historic preservation specialist with the D.C. Historic Preservation Office ("HPO") in the D.C. Office of Planning. I am currently employed as the Deputy State Historic Preservation Officer, a position I have held since February of 2002.

3. In the course of my duties I became involved in December 2001 in a review of construction in progress at 20 9th Street, N.E., as a result of a complaint the HPO received from Mr. Richard Nettler, an attorney representing an adjacent neighbor, Mr. Robert Stevens.

4. After receiving this complaint, I reviewed photographs of the property provided by Mr. Stevens and the HPO building inspectors, and reviewed the construction permits and plans for the project.

5. The original permit application characterized the project as a roof replacement, fence replacement, and garage door installation. In my opinion, the plans accompanying this application were inadequate because it was necessary to extrapolate missing information about the size of the project from a roof plan and a single rear elevation. In my opinion, the plans were also misleading because the effect of this missing information was to make the project appear smaller than in reality.

6. The construction work shown in photographs did not appear to be in compliance with a written condition that the HPO reviewer had placed on an amendment (No. B440544, dated Nov. 28, 2001) to the original building permit. This condition restricted the height of a section of exterior wall, which was to be reconstructed to match the height of an original wall that the owners had demolished without an appropriate permit. These walls were not shown in elevation on the plans.

7. This written condition appeared to conflict with information that could be extrapolated from the original plan. This suggested that the original HPO reviewer did not understand the actual extent of the project, and therefore approved the original permit by mistake.

8. The HPO reviewer also made an error in not requiring additional plans to clarify the conditional approval of the permit amendment.

9. After making this determination, I requested that a construction inspector in the Department of Consumer and Regulatory Affairs ("DCRA") issue a stop work order for the project.

10. On January 18, 2002, after the stop work order was issued, the property owner Laura Elkins and her daughter came in to speak with me.

11. I met with Ms. Elkins for more than an hour, discussing the reasons for the stop work order and the actions she would need to take in order to proceed with construction. I advised Ms. Elkins that there were two issues with the construction, one being the HPO condition about the height of the building walls, and the more significant issue being that the approved plans did not fully and accurately describe the work in progress.

12. Photographs of the work at that time clearly showed the construction of a second floor in progress.

13. The plans accompanying the original building permit application did not indicate a second floor or include any interior floor plans, building sections, or complete elevations, as is typically required for historic preservation and code review of building permit applications.

14. When I stated to Ms. Elkins that she was obviously building a second floor without adequate plans, she repeatedly stated that Mr. Bello, the zoning official, had approved the plans, and asked me to talk to Mr. Bello on her cellular phone.

15. I repeatedly told Ms. Elkins that before the project could proceed, she needed to submit complete and accurate plans showing the work actually being constructed. She wrote down a list of the plans I stated would be required. I advised her that the HPO would expedite review of the plans and schedule the project for the next meeting of the Historic Preservation Review Board ("HPRB").

16. Ms. Elkins repeatedly stated her belief that no additional plans for the project should be needed since the HPO had already stamped the plan accompanying the roof-replacement permit.

17. On January 22, 2002, I sent a message via electronic mail to Ms. Elkins' contractor, giving him the same information I had given to her regarding what the owners needed to submit (*i.e.*, complete and accurate plans for the entire project) before review could proceed.

18. On February 11, 2002, I met with Ms. Elkins and her husband, John Robbins, and repeated the same request for complete and accurate plans for HPRB review. I placed the case on the public notices for the HPRB's next two meetings (February 28 and March 28), but received no submission.

19. On March 7, 2002, Ms. Elkins came to the HPO requesting an over-the-counter approval of additional plans to remove portions of the second floor. I told her that HPO would not approve any plans without a complete submission, as requested earlier. Ms. Elkins subsequently avoided historic preservation review by obtaining the permit from DCRA as an "interior work only" permit not subject to historic preservation review.

20. DCRA subsequently lifted the stop work order despite my objections. When I requested that the stop work be reinstated, DCRA advised me that I should request revocation of the permits.

21. I was not involved in and did not seek support from anyone for a temporary restraining order motion filed by Mr. Robert Stevens against Ms. Elkins and Mr. Robbins.

22. On March 28, 2002, I requested direction from the HPRB on whether to request revocation of the building permits. Acting upon the advice of the HPRB, I requested revocation by DCRA in writing on April 3, 2002.

23. On May 17, 2002, Mr. Vincent Ford of DCRA issued a Notice of Violation to Ms. Elkins and Mr. Robbins. I did not revise or alter that notice before it was issued.

24. On September 16, 2002, Mr. Robbins submitted partial supplemental plans and photographs for HPO and HPRB review in partial compliance with the Notice of Violation. The HPRB considered these plans and a written HPO staff report on the project at its meeting on September 26, 2002. The staff report, recommending removal of portions of the construction, was prepared after receipt of these supplemental plans. No earlier draft of any such report or recommendation was prepared before that time.

25. As of the date of this declaration, Mr. Robbins and Ms. Elkins have not complied with the request of the HPRB to apply for a revised construction permit, as directed by the Notice of Violation.

26. I had no involvement whatsoever in the filing of any complaint against Mr. Toye Bello with the D.C. Office of the Inspector General. I had no knowledge of this complaint until after it was filed. To the best of my knowledge, no other employee of the HPO had any involvement whatsoever in this complaint.

This declaration consists of twenty-four (24) numbered paragraphs on five (5) pages. I declare under penalty of perjury that the foregoing is true and correct.

Executed on 15 June 2004

DAVID MALONEY