SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

|  |  |  |
|---|---|---|
| JOHN ROBBINS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 02-10453 |
| v. | ) | Judge Mary A. Terrell |
| | ) | Calendar No. 5 |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF TONI WILLIAMS-CHERRY

I, Toni Williams-Cherry, declare and state as follows:

1.  I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

2.  Since 1999, I have been employed as inspectional program specialist with the D.C. Historic Preservation Office ("HPO") in the D.C. Office of Planning (originally in the Department of Consumer and Regulatory Affairs ("DCRA")).

3.  In the course of my duties I first became involved in November 2001 in a review of construction in progress at 20 9th Street, N.E., as a result of a complaint the HPO received.

4.  On December 3, 2002, I inspected the property in response to another complaint HPO had received. I issued Notice of Infraction No. 049636 for noncompliance with the permit/approved plans and for working in violation of an existing (November 13, 2002) stop work order.

5.  On March 4, 2003, HPO received another complaint regarding illegal construction at the property, involving contractor delivery of materials and contractor vehicles blocking the

alley. I went out to the property on that day and observed two vehicles (apparently belonging to contractors) at the rear of the property. I saw two men exiting the garage; I identified myself and showed them my badge and identification. I asked them if they were performing any work at the property. One of the men said something to the effect that they were just delivering materials. and they provided me with documentation, which they retrieved from one of the vehicles, to support that they were only delivering materials. I asked if the owners were home, and if they were, could he let them know I was here. One of the men, Mr. Milton Harrell, told me to come inside the garage out of the cold and he would get Ms. Elkins for me. He let me into the garage area. Also, Mr. Harrell showed me the materials in the garage that they had already brought in from the truck and they corresponded with the documentation he provided to me earlier, and soon afterwards, when Ms. Elkins arrived, I attempted to explain why I was there, but she said something like "I don't care, just get out."

6.   HPO received similar complaints about construction and vehicles blocking the alley on March 6, 7, and 8, 2003. I understand that DCRA tried repeatedly at this time to get consent from the owners to inspect the property, but were refused each time.

7.   On March 27, 2003, I assisted in the execution of an Administrative Search Warrant on the property, along with Juan Scott (DCRA chief construction inspector), Denvert Boney (DCRA chief plumbing inspector), Robert Smith-Brock (DCRA electrical inspector), Phillip Thomas (DCRA construction inspector), and officers of the Metropolitan Police Department ("MPD") .

8.   When the MPD officers knocked on the front door and announced the purpose of the visit, Ms. Elkins slammed the door in their face. The officers knocked on the front door again and explained that refusing entry could result in arrest, because a search warrant was being

executed. Ms. Elkins then let us all in and informed us that she was calling her attorney, which the officers told her was her right. One of the officers also requested that she confine the family dog during the search.

9. I took all the photographs taken by the District during the search, and there was no damage to any of the owners' property by District officials at that time, to my knowledge.

10. Throughout the inspection, Ms. Elkins was snapping flash pictures in our faces and otherwise harassing us, at least until Mr. Robbins and their attorney arrived.

11. After observing documents that appeared to be evidence of illegal construction, Juan Scott and I asked the owners if they had any documents or materials related to the construction. Ms. Elkins voluntarily provided a notebook of such materials, which I took as it was given to me (*i.e.*, I did not add any documents to the notebook). Several of the inspectors had brought their own copies of building permits and plans regarding the property that they had gotten from DCRA's files prior to our arrival.

12. On April 15, 2003, I returned all documents seized during the administrative search to the owners' attorney, Jack Scheuermann.

13. I had no involvement whatsoever in the filing of any complaint against Mr. Toye Bello with the D.C. Office of the Inspector General.

This declaration consists of thirteen (13) numbered paragraphs on three (3) pages. I declare under penalty of perjury that the foregoing is true and correct.

Executed on _June 16th 2004._

TONI WILLIAMS-CHERRY