**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
                                    )
LAURA ELKINS and JOHN ROBBINS,      )
                                    )
              Plaintiffs,           )
                                    )
     v.                             )          Civil Action No. 04-480 (RMC)
                                    )
                                    )
DISTRICT OF COLUMBIA, et al.,       )
                                    )
                                    )
              Defendants.           )
                                    )
```

**MEMORANDUM OPINION**

Laura Elkins and John Robbins, wife and husband ("Plaintiffs"), obtained building permits from the District of Columbia for the purpose of renovating a row house. After all approvals were obtained, including approvals from the D.C. Historic Preservation Office ("HPO"), the District issued the permits. Neighbors objected to the building plans and pressured D.C., most particularly HPO, to retract them. This had the result of causing the District (1) to issue stop work orders; (2) to search the house pursuant to an administrative warrant and to seize various documents; and (3) to propose revoking the permits. Plaintiffs appealed the proposed revocation, and the matter was litigated before the D.C. Office of Administrative Hearings ("OAH").[1] Plaintiffs also brought this suit alleging that the District of Columbia, together with its officials, deprived them of their right to due process and their right to be free from unreasonable search and seizure. Pending before the

---

[1] On October 1, 2004, OAH began to hear cases previously adjudicated by the D.C. Department of Consumer and Regulatory Affairs and the Board of Appeals and Review. *See* D.C. Code § 2-1831.03(a) & (b) (defining OAH jurisdiction).

Court is Plaintiffs' motion for partial summary judgment; they seek a ruling that the building permits were valid and that the search and seizure were improper.  In opposition, Defendants have filed a motion for summary judgment that seeks dismissal of Plaintiffs' complaint.  As explained below, the cross motions will be granted in part and denied in part.

## I.  FACTS

Plaintiffs own a single family home at 20 Ninth Street, N.E., Washington, D.C. (the "Property").  Beginning in 2001, Plaintiffs applied for six building permits for various renovations to their home.  The Property is in the Capitol Hill Historic District, a designated historic district under the D.C. Historic Landmark and Historic District Protection Act, D.C. Law 2-144.  Therefore, Plaintiffs' permit applications were subject to review by the HPO, the Historic Preservation Review Board, and the D.C. Department of Consumer and Regulatory Affairs ("DCRA").  HPO and DCRA officials approved the building permit applications.

Notably, Plaintiffs planned to build a sloped roof over the middle and rear portions of the house.  The historic preservation requirements governing the Property apparently prohibited a second story in the middle and rear of the house, as Plaintiffs had originally contemplated. Neighbors complained about the construction.  After all permits had been fully approved, Acting Administrator of the DCRA Building and Land Regulation Administration ("BLRA") Denzil Noble, BLRA Administrator J. Gregory Love (Mr. Noble's predecessor), and Historic Preservation Officer David Maloney second-guessed the original approvals and sought to stop the project, asserting that Plaintiffs' construction was inconsistent with the historic character of the neighborhood.  *See* Pls.' Reply at 2-3.

The Plaintiffs first faced litigation in D.C. Superior Court instituted by a neighbor,

Robert Kim Stevens.[2]  District officials appeared and testified that Plaintiffs' permits were all legitimate and valid.  This did not satisfy Mr. Maloney, who seems to have organized a campaign against the construction on the Property.  Through his efforts, DCRA issued various stop work orders in 2002.  Then, on March 10, 2003, Mr. Noble sent Plaintiffs a letter requesting government inspection of the Property.  The letter indicated that the District had received complaints of ongoing construction in violation of a stop work order.  Plaintiffs refused to consent, and DCRA filed an application for an administrative search warrant.  Mr. Noble signed an affidavit in support of the warrant request, indicating "on April 27, 2001, a building permit, No. B436647, was issued to [Plaintiffs] for the replacement of the roof; installation of garage doors; and the replacement of a fence for the [Property]. "  Pls.' Ex. 21, OAH Order on Mot. to Suppress at 5. The Affidavit went on to explain:

> (1) On April 24, 2002, a stop work order was issued, pursuant to 12 D.C.M.R. § 117.1, because Plaintiffs were performing structural work without an appropriate permit in violation of the Construction Codes;
>
> (2) On May 17, 2002, the District issued a Notice of Violation for failure to comply with the April 24 stop work order;
>
> (3) On November 13, 2002, a stop work order was issued because Plaintiffs failed to comply with the May 17 notice.

*Id*.  The Affidavit indicated that on March 4, 7, and 10, 2003, DCRA inspectors visited the premises and were either denied entry or were told that no work was being performed, despite the presence of workmen, work vehicles, and construction supplies.  The Affidavit concluded, "[T]he Director has reason to believe that [Plaintiffs] are violating the Construction Codes, and such violations pose

---

[2] This lawsuit, captioned *Stevens v. Williams*, Case No. 02- 952 (D.C.), was dismissed by the court upon the parties' stipulation on June 25, 2002.  Pls.' Ex. 8.

an imminent threat to the health, safety and welfare of the public." *Id.*

On March 26, 2003, the District presented a warrant application and supporting affidavit to a Superior Court judge, who signed it.  The warrant authorized a search of the Property, but did not describe any items to be seized.  The next day, D.C. police and representatives of DCRA and HPO executed the search warrant.  The officials went throughout the home (including the bedrooms of sick children home from school), opening drawers, observing, and taking photos.  Inspector Toni Cherry, an employee of HPO and contract worker for DCRA, was one of several officials who seized documents, including a notebook belonging to Ms. Elkins.   The notebook contained permit and construction records, checking statements, financial records, and construction loan documents.  Pls.' Ex. 2, Elkins Decl. ¶ 25.   A return of search warrant filed in Superior Court in April 2003 listed an inventory of seized items including electrical approvals; plumbing approvals/permits; construction approval permits; assorted documents including receipts and contract documents; assorted invoices; the notebook; and estimates.

The District issued a notice of proposed revocation of the six building permits issued to Plaintiffs on December 17, 2003.[3]  Pls.' Ex. 11.  Plaintiffs challenged the proposed revocation, and that matter came before OAH.

In the OAH proceedings, Plaintiffs moved to suppress evidence resulting from the administrative search of the Property.    Plaintiffs claimed that the Affidavit's statement that the alleged violations posed an imminent threat to health, safety, and welfare was not factually supported and that the seizure of documents exceeded the scope of the authorized search.

---

[3] The District proposed to revoke permit B436647 and amended permits B440371, B440544, B443341, B444561, and B445608.

The Hearing Officer granted in part and denied in part Plaintiffs' motion to suppress. He found that the search warrant was valid and supported by probable cause.

> The Government ha[d] sufficient cause to believe that construction work was occurring . . . The danger to public health, welfare and safety was based upon a reasonable suspicion that [Plaintiffs] were presently altering a protected property without Government approval, and in violation of a stop[ ]work order.   The Government had a legitimate interest in preserving the integrity of the protected structure as a[n] historically preserved building, and in enforcing its Construction Codes for health, safety and welfare of [Plaintiffs], their neighbors, and the public.

Pls.' Ex. 21, OAH Order on Mot. to Suppress filed Nov. 22, 2005 at 14.  However, he also found that the warrant did not authorize the seizure of any documents.  *Id*. at 15-16; *see also id*. at 20 (citing *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (where a warrant fails to state with particularity the items to be seized, the items seized must be suppressed)). The Hearing Officer found that the consent and plain view exceptions to the warrant requirement did not apply:  the documents were not in plain view because the officers went through drawers to find them, *id*. at 21, and Plaintiffs did not consent.  *Id*. at 15 & 21.  He concluded:

> Therefore, I must suppress the admission of all items seized by the Government during its inspection. . . . Because the warrant validly authorized the search of the premises, I am not suppressing the following evidence: testimony of officials as to their observations of the interior areas of the property; reports regarding such observations; and photographs taken by officials of the interior areas of the Property.  To the extent that such evidence also refers to the items illegally seized from the Property, the evidence shall be redacted before it can be admitted.

*Id*. at 21.

OAH held evidentiary hearings on the District's notice of proposed revocation on May 23-24 and November 29-30, 2006.  On March 20, 2007, OAH issued a final order denying and

dismissing the proposed revocation.  *See* Pls.' Ex. 20, OAH Final Order filed Mar. 20, 2007 ("OAH

Final Order").[4]  The OAH Final Order explained:

> As I have reviewed the large body of evidence and testimony in this case, the most salient feature for me has been that there are equities on both sides of the case.  On one hand, I agree with [Historic Preservation Officer] Maloney's point that the construction of a sloped roof of the dimension proposed by [Plaintiffs] had a potential impact on the historical neighborhood.  The neighbors' concerns about the impact of the construction on the neighborhood and on their access to sunlight and similar factors, were legitimate concerns.  If the [District] had denied the initial application on this basis, [Plaintiffs] would have had a difficult road trying to overcome the objections to their project.
>
> On the other hand, the concerns were known at the time [Plaintiffs] initially applied for a building permit, and the [District] did approve all of the permits notwithstanding the concerns.  [Plaintiffs] endured a nightmare situation in which the [District] officials dueled amongst themselves over the propriety of the project, and they sent out mixed messages.  Meanwhile, [Plaintiffs] have been effectively blocked from completing their work until the matter has been fully litigated.

*Id*. at 44.  OAH also found that Plaintiffs were not in compliance with Building Permit B443341,

and ordered them to comply by building a partition wall in a storage area.[5]

---

[4] Prior to the OAH Final Order, Plaintiffs moved for a directed decision, which OAH granted in part and denied in part.  Defs.' Ex. 3, OAH Order filed Sept. 27, 2006.

[5] OAH ordered the parties to confer and agree on a compliance plan.  *See* OAH Final Order at 47.  Plaintiffs moved for reconsideration, and on April 23, 2007, OAH denied the motion, clarifying that Plaintiffs must build a partition wall in a storage area above the kitchen in order to comply with permit B443341.  *See* Defs.' Ex. 2, OAH Order After Show Cause Hearing filed July 17, 2007.  The District took the position that Plaintiffs must obtain a building permit for construction of the partition wall, and the Plaintiffs objected.  OAH modified the relief order to require Plaintiffs to comply with the permit process for the construction of the partition wall.  *See id*.  The OAH Final Order advised the parties that, pursuant to D.C. Code § 2-1831.16(c)-(e), the OAH decision could be appealed to the D.C. Court of Appeals.  OAH Final Order at 54.  No appeal was filed by either party.

In its Final Order, OAH made certain findings relevant to Plaintiffs' due process claim. OAH noted that generally during the 2001-02 period, the DCRA seldom provided written notice of hearing rights with stop work orders and notices of violation and only occasionally provided oral notice of hearing rights. *Id*. at 11.[6] When the DCRA issued the May 17, 2002, Notice of Violation ("NOV"), it did not include any notice of appeal rights. Further, an attorney for the District erroneously informed Plaintiffs that they could not appeal. *Id*. at 20. Despite these consistent failures to advise Plaintiffs of their appeal rights, the Hearing Officer held that the NOV was validly issued and had legal effect. *Id*. at 31.[7] Plaintiffs were only advised of their appeal rights when DCRA issued a stop work order on November 13, 2002. *Id*. at 24. Plaintiffs immediately

---

[6] For example, on November 27, 2001, the District issued a stop work order regarding Permit Nos. B436647 and B440371. Plaintiffs were not advised of their right to appeal this stop work order and they did not appeal. OAH Final Order at 16.

[7] The NOV charged that the construction was inconsistent with Plaintiffs' response to question 60 on their application, *i.e.*, that there would be no change to the volume of the building due to the proposed construction. OAH determined that the NOV was factually supported, as the answer to question 60 was inaccurate — the proposed construction in fact would increase the volume of the building. OAH Final Order at 21. However, OAH also found that when Acting Zoning Administrator Toye Bello approved the permit, he did not do so based on Plaintiffs' response to question 60. His approval was based on the accompanying drawings which clearly showed additional volume. *Id*. at 14. Thus, Building Inspector Vincent Ford issued the NOV based on the erroneous assumption that the permit approval was based on Plaintiffs' inaccurate response to question 60. Plaintiffs contended that the NOV was issued in bad faith. The Hearing Officer expressly rejected this claim, finding that D.C. officials had legitimate concerns that the renovation violated the Act, despite approval of initial permit applications. The Hearing Officer explained, "I do not find[]that the NOV was issued in bad faith. Mr. Ford certainly acted in a good faith belief that the basis for the NOV was valid. . . . The primary problem was not bad faith, but rather internal conflict among the officials and tardiness in their actions." *Id*. at 21 n.13. Although the Hearing Officer found that Plaintiffs failed to comply with the NOV by failing to submit a new application showing all their construction plans, he further concluded that this failure did not support a revocation of the six building permits because the alleged violation that formed the basis for the NOV was not sustained by the record and because Plaintiffs already had completed a substantial portion of the construction based on the prior permit approvals. *Id*. at 31, 39 & 46.

appealed.

In the midst of the proceedings before OAH, on March 23, 2004, Plaintiffs filed a

Complaint in this Court[8] alleging a violation of their Fourth, Fifth, and Fourteenth Amendment

rights under 42 U.S.C. § 1983. *See* Compl. Counts I and II.[9]  Defendants include the District of

Columbia and former Mayor Anthony Williams[10] in his official capacity, as well as the following

individuals in their official and individual capacities: former BLRA Acting Administrator Noble,

Inspector Williams-Cherry, Historic Preservation Officer Maloney, and former BLRA Administrator

Love.   On November 4, 2005, the Court stayed this case pursuant to the *JMM v. District of

Columbia*, 378 F. 3d 1117 (D.C. Cir. 2004), and the *Younger* abstention doctrine.[11]  On June 20,

---

[8] Plaintiffs had also filed suit in D.C. Superior Court, seeking permission to continue their construction.  The Superior Court denied their request for an injunction in December 2002, and then on March 26, 2004, the Superior Court dismissed the suit without prejudice for lack of jurisdiction due to failure to exhaust administrative remedies.

[9] Paragraph 8 of the Complaint alleged a conspiracy to interfere with civil rights under 42 U.S.C. § 1985.  Defendants request summary judgment on this claim, asserting that Plaintiffs failed to allege any class-based invidious discriminatory animus, a prerequisite for a § 1985 claim. Plaintiffs have failed to respond to this argument and, thus, it is conceded.  *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (on summary judgment, a court may treat those arguments that the plaintiff failed to address as conceded).   Judgment on the § 1985 claim will be entered for Defendants.

[10] Mayor Williams' successor, Mayor Adrian Fenty, is automatically substituted as a party in this action.  *See* Fed. R. Civ. P.  25(d)(1).

[11] In *JMM*, the operator of an adult video store brought suit challenging the constitutionality of D.C.'s enforcement of zoning regulations.  The district court dismissed the plaintiff's claims for injunctive and declaratory relief based on the *Younger* abstention doctrine, which provides that a federal court should not enjoin a pending state proceeding that is judicial in nature and involves important state interests.  *JMM*, 378 F. 3d at 1120 (citing *Younger v. Harris*, 401 U.S. 37, 41 (1971)).  The district court stayed the plaintiff's claims for money damages.   The D.C. Circuit affirmed, holding that *Younger* abstention applies to D.C. administrative proceedings.  *JMM*, 378 F. 3d at 1125-28.

2007 — after OAH rendered its Final Order denying the District's proposed revocation of Plaintiffs'

building permits and after OAH denied Plaintiffs' motion for reconsideration —  this Court lifted

the stay.  Plaintiffs filed their motion for partial summary judgment, and Defendants opposed,

seeking summary judgment on all claims.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir.

1995).  Moreover, summary judgment is properly granted against a party who "after adequate time

for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at

trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving

party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671,

675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a

reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not

significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50

(citations omitted).

# III. ANALYSIS

Plaintiffs assert that they are entitled to relief under 42 U.S.C. § 1983 due to Defendants' alleged violation of their rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must plead and prove that the defendants, acting under color of state or D.C. law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).

## A. Collateral Estoppel and Plaintiffs' Fourth Amendment Claim

The collateral estoppel doctrine applies to Plaintiffs' Fourth Amendment claim.[12] Under the doctrine of collateral estoppel, or issue preclusion, an issue of fact or law that was actually litigated and necessarily decided is conclusive in a subsequent action between the same parties or their privies. *Carr v. Rose*, 701 A.2d 1065, 1076 (D.C. 1997). An issue is "actually litigated" for collateral estoppel purposes "when it is (1) properly raised, by pleadings or otherwise, (2) submitted for determination, and (3) determined." *Id.* at 1076-77 (quoting the Restatement (Second) of Judgments § 27 Cmt. d) (internal quotation marks omitted). "Collateral estoppel precludes the relitigation of factual or legal issues decided in a previous proceeding and essential to the prior judgment." *Kingman Park Civic Ass'n v. Williams*, 924 A.2d 979, 987 (D.C. 2007). Factual findings by D.C.'s administrative agencies acting in a judicial capacity are entitled to preclusive effect, so long

---

[12] Plaintiffs and Defendants argue that collateral estoppel, res judicata and judicial estoppel bar relitigation of Plaintiffs' claim under the Fourth Amendment. Because the Court finds that collateral estoppel applies, it is not necessary to decide whether the other doctrines also apply.

as the proceeding was "the essential equivalent of a judicial proceeding." *Winder v. Erste*, 511 F. Supp. 2d 160, 176 (D.D.C. 2007).

The collateral estoppel doctrine applies to Plaintiffs' Fourth Amendment claim because the parties have already litigated and OAH has already decided, without appeal, the question of the legality of the search of the Property and the seizure of documents. Plaintiffs contend that their Fourth Amendment right to be free from unreasonable search and seizure was violated when Defendants conducted an administrative search of their Property and seized documents. In support of their motion to suppress, Plaintiffs litigated this very issue before OAH. After an evidentiary hearing on the issue, the Hearing Officer held that the search was reasonable as it was based on probable cause, but that the seizure of documents was not reasonable. The Fourth Amendment provides "no warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched and the persons or things to be seized." *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (warrant itself must particularly describe the things to be seized). Because the warrant did not specify any documents to be seized, the seizure of the documents was outside the scope of the warrant and in violation of Plaintiffs' Fourth Amendment rights.

Defendants argue that they had probable cause to seize physical evidence that they found when searching Plaintiffs' home, citing *Texas v. Brown*, 460 U.S. 730, 742 (1983) (probable cause "merely requires that the facts available to the officer would warrant a [person] of reasonable caution in the belief that certain items may be . . . useful as evidence.") As explained above, OAH found that the District had probable cause to search the property. Further, with regard to the seizure, the critical issue was not whether there was probable cause to seize evidence. The issue was whether the warrant was properly "particularized," which it was not.

-11-

Defendants do not address Plaintiffs' claim that the seizure was invalid because the warrant was not particularized; thus, this issue is conceded. *See FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (on summary judgment, a court may treat those arguments that the plaintiff failed to address as conceded); LCvR 7.1(b) (same). Instead, Defendants erroneously cite *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999), for the proposition that the "seizure of evidence pursuant to a valid search warrant is reasonable if there is underlying probable cause to believe, in view of the totality of the circumstances, that there is a fair probability that evidence will be found at the site of the search." *See* Defs.' Mem. at 28 (internal quotation marks omitted). The court in *Gilliam* did not address the reasonableness of a seizure. Instead, *Gilliam* addressed the issue of whether probable cause existed, stating "[p]robable cause to search exists where in view of the 'totality of the circumstances,' 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" 167 F.3d at 634 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In sum, Defendants are correct that Plaintiffs are collaterally estopped from asserting liability based on the alleged unreasonable search, as that matter was litigated and decided in Defendants' favor. Further, Plaintiffs are correct that Defendants are estopped from contesting liability based on the unreasonable seizure, as that issue was litigated and decided in Plaintiffs' favor.

Having established liability on the Fourth Amendment claim, Plaintiffs still must prove damages. While the amount of damages Defendants owe is a fact question, the measure of damages is a legal question. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003). The purpose of a damage award in a § 1983 case is to compensate a plaintiff for injuries caused by the violation, *Carey v. Piphus*, 435 U.S. 247, 254 (1978), and damages may include out-of-pocket loss, impairment of reputation, humiliation, and mental anguish and suffering. *Memphis Community Sch.*

*Dist. v. Stachura*, 477 U.S. 299, 307 (1986).

Defendants contend that Plaintiffs should not be allowed to seek damages under *Heck v. Humphrey*, 512 U.S. 477 (1994), because OAH found that Plaintiffs violated District law with regard to Building Permit B443341 and Plaintiffs should not be allowed to attack this determination collaterally.  In *Heck*, the Supreme Court held that "in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed . . .  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id*. at 486-87.  The District would mis-apply *Heck*.  Plaintiffs' assertion of their Fourth Amendment rights is not a collateral attack on the OAH decision because OAH agreed that their Fourth Amendment right to be free from unlawful seizures was, indeed, violated.  Furthermore, in this suit Plaintiffs are not attempting to collaterally attack the OAH finding that they were not in compliance with Building Permit B443341 and they needed to build a partition wall in a storage area in order to comply with the Permit.  Plaintiffs will be permitted to proceed on their claim for damages due to the Fourth Amendment violation.

In addition to compensatory damages, Plaintiffs assert a claim for punitive damages.  Defendants seek summary judgment on this issue.  As a matter of law, a plaintiff cannot recover punitive damages against the District on a § 1983 claim.  *Feirson v. Dist. of Columbia*, 315 F. Supp. 2d 52, 57 (D.D.C. 2004); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (punitive damages are not available against a municipality absent an express statutory provision).  Thus, the punitive damage claim against the District will be dismissed.  Punitive damages, however,

are available against the individual defendants where their conduct was "motivated by evil motive or intent, or when it involve[d] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  As there has been no discovery yet in this case, dismissal of Plaintiffs' claim for punitive damages against the individual defendants would be premature.

           B.  Due Process

The due process clause of the Fifth Amendment, not the Fourteenth Amendment, applies to the District of Columbia.  The District of Columbia is a political entity created by the federal government and thus is subject to the restrictions of the Fifth Amendment.  *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).  "The procedural due process components of the two Amendments are the same."  *Id*. at 1330 n.5.  Because the Fourteenth Amendment does not apply to the District and its officials, Plaintiffs' Fourteenth Amendment claim must be dismissed.

           1.  Procedural Due Process

The Fifth Amendment protects against the deprivation of property[13] without due process.  In order to determine whether a litigant's due process rights were adequately protected, courts consider:

---

[13] The holder of a building permit or a temporary building permit has a property interest in the continued effect of such permit, when the permit can only be revoked upon certain conditions. *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1073 (D.C. Cir. 2003); *cf.  Lopez v. FAA*, 318 F.3d 242, 249 (D.C. Cir. 2003) (when a permit can be revoked in the unfettered discretion of the issuing authority, no property interest exists).  Under D.C. law in effect at the time, the building permits issued to the Plaintiffs could only be revoked for the reasons set forth in 12 D.C.M.R. 108.9 (revised and recodified at 12A D.C.M.R. § 105 (2004)).  Thus, Plaintiffs had a Fifth Amendment property interest in their building permits.  Defendants do not contest this point.

> (1) the private interests . . . affected by the official action;
>
> (2) the risk of an erroneous deprivation of such an interest through the procedures used and the value, if any, of additional or substitute procedural safeguards; and
>
> (3) the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Procedural due process requires sufficient notice and opportunity to be heard at a meaningful time and in a meaningful manner. *See id.*; *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 56 F.3d 1469, 1472 (D.C. Cir. 1995). Sufficient notice and opportunity to be heard is provided by a notice of intent to rescind a building permit together with the opportunity to respond in writing. For example, in *American Towers, Inc. v. Williams*, 146 F. Supp. 2d 27, 33 (D.D.C. 2001), *aff'd*, No. 01-7141, 2002 WL 31428383 (D.C. Cir. Oct. 30, 2002), the DCRA issued a notice of intent to rescind and cancel a plaintiff's building permit. DCRA informed the plaintiff of the grounds upon which the agency proposed to act and the plaintiff had the opportunity to file a written response. Even though the plaintiff submitted a response, DCRA rescinded the permit. The district court found that this procedure met the requirements of due process. *Id*.

In contrast, in *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 460-62 (D.C. Cir. 1997), the D.C. Circuit found that DCRA had violated procedural due process rights. At a public hearing, DCRA orally suspended Tri County's building permit for the construction of a facility for soil decontamination, based on erroneous information that a public housing project was to be built next door. *Id*. at 457. Tri County was not given the opportunity to dispute the facts upon which the suspension was predicated. *Id*. Two days later a stop work order was issued. The Circuit

found that the oral order suspending the permit violated due process because it was not based on formal evidence and the only review was by the Board of Appeals and Review, a single-step appeal process that did not guarantee prompt resolution. *Id.* at 460-62. *See also Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1239 (D.C. Cir. 1997) (permit revocation without a hearing was unlawful).

Like the plaintiff in *American Towers*, Plaintiffs here received notice of DCRA's proposed permit revocation and an opportunity to be heard. The proposed revocation of the six building permits was fully litigated before OAH. Under these circumstances, Plaintiffs have not presented sufficient evidence to support their claim of deprivation of procedural due process.

With six building permits and certain District officials determined to interfere with their construction, Plaintiffs were peppered with stop work orders. In this suit, they complain generally that the District did not provide notice of their appeal rights with regard to most of the stop work orders[14] and with regard to the NOV. It is clearly bad practice for the District not to inform citizens of their rights of appeal; this should be done with every stop work order and NOV that is issued. However, the stop work orders and the NOV were subsumed into the proposed revocation of permits as they were the basis for the proposal. Plaintiffs had a full – if tardy – opportunity to challenge the proposed revocation and everything that went before. In these circumstances, the Court does not find a procedural due process violation.[15]

---

[14] Plaintiffs do not indicate specifically which of the numerous stop work orders posted on the Property are the subject of their due process claim.

[15] Plaintiffs also claim that their procedural due process rights were violated because stop work orders were issued "without required pre-deprivation hearings." Pls.' Reply at 3. A pre-deprivation hearing, however, is not required before the issuance of a stop work order; post-deprivation review and appeal is sufficient. *See 3883 Connecticut LLC v. District of Columbia*, 336

2.  Substantive Due Process

Plaintiffs allege that their substantive due process rights were violated when the District sought to revoke their building permits.  "The right to improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001).  Further, the enforcement of land use regulations constitutes an important state interest.  *JMM*, 378 F.3d at 1126; *see* D.C. Code § 6-641.09 (requirements for building permits) and § 6-641.10 (D.C. Mayor shall enforce zoning regulations).  While land use is subject to reasonable regulation, the doctrine of substantive due process protects individuals from arbitrary government action.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

"[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *County of Sacramento*, 523 U.S. at 847 n.8; *accord Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001).  Only government conduct that was "gravely unfair" can give rise to a substantive due process claim.  *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988).  Such drastic actions include those involving a "substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights." *Id.* at 1080; *accord George Washington Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003).  "The government's infringement of the recognized property interest must constitute a grave unfairness: Inadvertent errors, honest mistakes, agency

F.3d 1068, 1074 (D.C. Cir. 2003) (procedural due process was not violated by issuance of stop work orders where 2A D.C.M.R. § 122.1.2 provided for review of stop work order by two District officials and then immediate appeal to the Board of Appeals and Review).

confusion, even negligence in the performance of official duties, do not warrant redress." *Silverman*,

845 F.2d at 1080.  A mere violation of law or deviation from regulations and procedures has been

found insufficient to support a substantive due process claim.  *Am. Fed'n of Gov't Employees, Local*

*446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007); *Duckett v. Quick*, 282 F.3d 844, 848 (D.C.

Cir. 2002).

Plaintiffs assert that Defendants sought to stop their renovation project, despite the

prior approval of multiple building permits, based on the "mere belief" that the construction was

inconsistent with the character of the neighborhood, and that there was no public safety concern at

issue.  Pls.' Reply at 2-3.  Plaintiffs' argument presumes that concern with the character of the

neighborhood was somehow inappropriate and that a public safety concern was a prerequisite for the

stop work orders and the proposed revocation of permits.  Not so.  Defendants were authorized to

enforce the District's valid land-use restrictions.  *See Palazzolo*, 533 U.S. at 627.  Further,

Defendants were charged with protecting public welfare, and historic preservation is a part of public

welfare.

Most critically, Plaintiffs already have litigated the issue of bad faith before OAH,

and they are collaterally estopped from raising this issue here.  OAH found that the search warrant

was valid and supported by probable cause based on the District's interest in preserving the historic

integrity of the neighborhood:

> The Government has sufficient cause to believe that construction
> work was occurring . . . The danger to public health, welfare and
> safety was based upon a reasonable suspicion that [Plaintiffs] were
> presently altering a protected property without Government approval,
> and in violation of a stop[ ]work order.  The Government had a
> legitimate interest in preserving the integrity of the protected structure
> as a historically preserved building, and in enforcing its Construction

> Codes for health, safety and welfare of [Plaintiffs], their neighbors, and the public.

Pls.' Ex. 21, OAH Order on Mot. to Suppress filed Nov. 22, 2005 at 14.  In its Final Order, OAH again found that the District had legitimate concerns regarding the historic preservation of the Property.  OAH Final Order at 44.  OAH found that the NOV was valid, *id*. at 31, and that it was not issued in bad faith because District officials had legitimate concerns that the renovation violated the Act, despite approval of initial permit applications.  *Id*. at 21 n.13.  While OAH noted that District officials "dueled amongst themselves over the propriety of the project" and "they sent out mixed messages," *id*. at 44, such conduct does not meet the high bar required to support a substantive due process claim.  Having challenged before OAH the propriety and good faith of the actions of the involved District officials and having failed to appeal the contrary decision, Plaintiffs are bound by that result and are precluded from re-litigating here.

### C.  Municipal Liability under *Monell*

In order to state a claim against a municipality under § 1983, a plaintiff must show that the municipality, through an official custom, practice, or policy, caused the alleged constitutional violation.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *accord Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004).  While Plaintiffs have not stated a due process claim, as explained above, they have established that their Fourth Amendment rights were violated.  Defendants contend that there is no evidence that the constitutional violation was caused by a D.C. custom, practice, or policy.  Because discovery has not taken place yet in this case, however, dismissal of the District on *Monell* grounds would be premature.

### D.  Qualified Immunity

Qualified immunity shields a government official from liability under § 1983

provided that the official's conduct did not violate a clearly established constitutional right of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 601, 609 (1999). To determine whether qualified immunity applies, a court must make a two-fold inquiry. First, a court must determine whether Plaintiffs' allegations, taken as true, show that the officer's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (1999); *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004). Second, if a plaintiffs' allegations show a constitutional violation, the court must then examine whether the constitutional right in question was clearly established at the time of the alleged violation. *Id*.

As explained above, Plaintiffs' Fourth Amendment rights were violated when District officials exceeded the scope of the administrative warrant and seized documents. The Fourth Amendment itself requires that a warrant particularly specify any items to be seized, as it provides, "no warrants shall issue, but upon . . . particularly describing the place to be searched and the persons or things to be seized." The law in this regard, based in the language of the Fourth Amendment itself, was clearly established at the time of the violation. Qualified immunity does not shield the individual Defendants from liability on Plaintiffs' Fourth Amendment claim.

### E.  Claims Against Mayor in His Official Capacity

The Amended Complaint names former Mayor Williams (now Fenty) in his official capacity. A § 1983 suit against an official in his official capacity is not a suit against the official, but a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, claims against a defendant in his official capacity are treated as claims against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Atchison v. Dist. of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). The suit against the Mayor is really a suit against the District of

Columbia.  The allegations against the Mayor will be dismissed.

### F.  Declaratory Judgment

Plaintiffs' motion for partial summary judgment also seeks a declaratory judgment that the building permits were valid.  Declaratory relief was not sought in the Complaint, and, thus, that issue is not before the Court.  Accordingly, Plaintiffs' request for declaratory judgment will be denied.

## IV.  CONCLUSION

For the reasons explained above, Plaintiffs' motion for partial summary judgment [Dkt. #42] and Defendants' motion for summary judgment [Dkt. #43] will be granted in part and denied in part.  Plaintiffs' motion for partial summary judgment will be granted on the claim that their Fourth Amendment rights were violated when the District seized documents from their home.  Defendants' motion to dismiss Plaintiffs' claims under the Fifth and Fourteenth Amendments and under 42 U.S.C. § 1985, and those against the Mayor in his official capacity, will be granted.  Further, Plaintiffs' claim for punitive damages against the District will be dismissed.  Thus, the only claim remaining in this case is Plaintiffs' Fourth Amendment claim based on Defendants' seizure of documents, seeking compensatory damages against the District and compensatory and punitive damages against the individual defendants.  A memorializing order accompanies this Memorandum Opinion.

Date:  December 12, 2007                                      /s/
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge