**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LAURA ELKINS and JOHN ROBBINS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 04-480 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Laura Elkins and John Robbins, wife and husband ("Plaintiffs"), filed a motion to compel discovery from the District of Columbia and the Individual Defendants:   Denzil Noble, David Maloney, Toni Williams-Cherry, and J. Gregory Love.[1]  Defendants contend that the requests are overbroad and that certain information is protected by the attorney-client privilege, the deliberative process privilege, and the work product doctrine.

## I. FACTS[2]

Plaintiffs alleged that their Fourth Amendment right to be free from unreasonable search and seizure was violated when Defendants conducted an administrative search of their home and seized documents on March 27, 2003.  The search and seizure were instigated by the D.C. Department of Consumer and Regulatory Affairs ("DCRA") and the D.C. Historic Preservation

---

[1] The District of Columbia and the Individual Defendants are collectively referred to as Defendants.

[2] Further background facts can be found in *Elkins v. District of Columbia*, 527 F. Supp. 2d 36 (D.D.C. 2007).

Office ("HPO").   The legality of both the search and the seizure were litigated before the D.C. Office

of Administrative Hearings ("OAH"), after which the Hearing Officer, Administrative Law Judge

Paul B. Handy, granted in part and denied in part Plaintiffs' motion to suppress.  *See Elkins v.*

*District of Columbia*, 527 F. Supp. 2d at 42.  After an evidentiary hearing, the Hearing Officer held

that the search was constitutionally reasonable as it was based on probable cause, but that the seizure

of documents was not constitutionally reasonable because it was not expressly authorized by the search

warrant.  *Id*. at 42, 46 (citing *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (where a warrant fails to

state with particularity the items to be seized, the items seized must be suppressed)).

> The Government ha[d] sufficient cause to believe that construction
> work was occurring . . . The danger to public health, welfare and
> safety was based upon a reasonable suspicion that [Plaintiffs] were
> presently altering a protected property without Government approval,
> and in violation of a stop[ ]work order.  The Government had a
> legitimate interest in preserving the integrity of the protected structure
> as a[n] historically preserved building, and in enforcing its
> Construction Codes for health, safety and welfare of [Plaintiffs], their
> neighbors, and the public.

527 F. Supp. 2d at 42 (quoting Pls.' Ex. 21, OAH Order on Mot. to Suppress filed Nov. 22, 2005 at

14).

This Court granted in part and denied in part Plaintiffs' and Defendants' cross

motions for summary judgment on the Fourth Amendment issues, finding that the parties were

collaterally estopped from relitigating the issues that had been decided by the OAH:

> In sum, Defendants are correct that Plaintiffs are collaterally
> estopped from asserting liability based on the alleged unreasonable
> search, as that matter was litigated and decided in Defendants' favor.
> Further, Plaintiffs are correct that Defendants are estopped from
> contesting liability based on the unreasonable seizure, as that issue
> was litigated and decided in Plaintiffs' favor.

Having established liability on the Fourth Amendment claim, Plaintiffs still must prove damages.  While the amount of damages Defendants owe is a fact question, the measure of damages is a legal question.  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003).  The purpose of a damage award in a § 1983 case is to compensate a plaintiff for injuries caused by the violation, *Carey v. Piphus*, 435 U.S. 247, 254 (1978), and damages may include out-of-pocket loss, impairment of reputation, humiliation, and mental anguish and suffering.  *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986).

. . .

In addition to compensatory damages, Plaintiffs assert a claim for punitive damages.  Defendants seek summary judgment on this issue.  As a matter of law, a plaintiff cannot recover punitive damages against the District on a § 1983 claim.  *Feirson v. Dist. of Columbia*, 315 F. Supp. 2d 52, 57 (D.D.C. 2004); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (punitive damages are not available against a municipality absent an express statutory provision).  Thus, the punitive damage claim against the District will be dismissed.  Punitive damages, however, are available against the individual defendants where their conduct was "motivated by evil motive or intent, or when it involve[d] reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).

*Id*. at 46-47.  Thus, the only issues remaining in this case are whether and to what extent Plaintiffs are entitled to compensatory damages against the District and to compensatory and punitive damages against the Individual Defendants.

Plaintiffs seek production of documents and a Federal Rule of Civil Procedure Rule 30(b)(6)[3] deposition of the District; Defendants object and seek a protective order, claiming that Plaintiffs' requested discovery is not relevant to the narrow issues remaining and that certain

---

[3] Rule 30(b)(6) provides for service of a notice of deposition on an organization; the named organization then designates one or more individuals to testify on its behalf.  Fed. R. Civ. P. 30(b)(6).

deposition testimony and documents are protected by attorney-client privilege, deliberative process privilege, and the work product doctrine.

More specifically, Plaintiffs seek the following documents:

1.  All documents that relate in any way to the decision to seek a warrant for the search of Plaintiff's home.

2.  All documents that relate in any way to the application for, and obtaining of, the search warrant.

3.  All documents that relate in any way to the District's custom, practice, or policy for conducting an administrative seizure of documents from a private residence.

4. All documents containing or reflecting communications that relate in any way to the seizure of documents from Plaintiffs' home.

5.  All documents that relate in any way to meetings in which the search of Plaintiffs' home was discussed or mentioned.

Pls.' First Request for Production.  Plaintiffs also served a Rule 30(b)(6) deposition notice on the

District which included the following topics:

Any and all discussions, analysis, or use in any manner of the documents seized from Plaintiffs' home, including all meetings, discussions, drafting or preparation, and use of such documents in connection with the institution, prosecution or OAH hearing on the attempted revocation of Plaintiffs' building permit.

The intended purpose and role that the documents seized from Plaintiffs' home during the execution of the search warrant served in initiating the subsequent proceedings relating to the revocation of Plaintiffs' construction permits.

Pls.' Mot. to Compel at 38.

Defendants objected to the requests for documents, claiming that they were

overbroad, duplicative,  unduly burdensome, and not reasonably calculated to lead to the discovery

-4-

of admissible evidence.  Even so, the Defendants indicate that they provided "all responsive documents," *see* Defs.' Opp'n at 4, together with an "Email Privilege Log," listing documents withheld on the basis of one or more of the following privileges: attorney-client, deliberative process, or work product. With regard to the Rule 30(b)(6) deposition notice, the District refused to designate a witness on the topics set forth above, claiming attorney-client and deliberative process privileges. Pls.' Mot. to Compel, Ex. 14.

Then, Plaintiffs filed this motion to compel.  Plaintiffs request an order (1) compelling the production of Document Nos. 11, 18, 20, 22, 23, and 25-48 identified in Defendants' Email Privilege Log and (2) requiring the District to designate a witness or witnesses to testify in response to all topics in Plaintiffs' Rule 30(b)(6) deposition notice.  Defendants opposed and submitted Document Nos. 11, 18, 20, 22, 23, and 25-48 for an *in camera* review.

## II.  ANALYSIS

### A.  Scope of Discovery

The scope of pre-trial discovery is generally quite broad.  Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  The Court may limit discovery if 1) it is unreasonably cumulative or duplicative or is obtainable from a less burdensome source; 2) the party seeking the discovery has had ample opportunity to obtain the information; or 3) the burden or expense outweighs the likely benefit. Fed. R. Civ. P. 26(b)(2).

"Plaintiffs' theory is that the Defendants' principal purpose in obtaining a search

warrant and entering their home on March 27, 2003 was to seize documents which, Defendants

hoped, would support revocation of Plaintiffs' building permits." Pls.' Mot. to Compel at 3.

However, it is not the motive of the Individual Defendants in obtaining the search warrant that is the

issue here, as the Hearing Officer decided that the search was based on probable cause. The District

had cause to believe that construction work was occurring in violation of a stop work order, and the

District had a reasonable suspicion that Plaintiffs were altering an historically protected property

without proper government approval, thus creating a danger to public health, welfare, safety, and

historic preservation. *See Elkins*, 527 F. Supp. 2d at 41-42.[4] Rather, the issues are whether and to

---

[4] At times, Plaintiffs have mis-characterized the facts in this case. First, they assert, "Plaintiffs' central claim is that Defendants intentionally planned and executed a warrantless search for the purpose of seizing documents that Defendants could use to initiate a revocation of Plaintiffs' building permits." Pls.' Reply at 4. Defendants did not conduct a "warrantless search" — they had a lawful search warrant based on probable cause. *Elkins*, 527 F. Supp. 2d at 41-42. Plaintiffs also assert "Defendants later used the illegally seized documents to initiate a groundless revocation proceeding for Plaintiffs' valid building permit." Pls.' Reply at 1. Although the OAH did not revoke Plaintiffs' building permit, it did not find that the revocation proceedings were "groundless." The Hearing Officer found that the District had a legitimate interest in preserving the integrity of the protected structure as an historically preserved building, and in enforcing its Construction Codes for the health, safety and welfare of Plaintiffs, their neighbors, and the public. Moreover, the Hearing Officer did not find that the District issued the Notice of Violation ("NOV") in bad faith. As the Court explained in its December 12, 2007 Memorandum Opinion:

> The primary problem was not bad faith, but rather internal conflict among the officials and tardiness in their actions. Although the Hearing Officer found that Plaintiffs failed to comply with the NOV by failing to submit a new application showing all their construction plans, he further concluded that this failure did not support a revocation of the six building permits because the alleged violation that formed the basis for the NOV was not sustained by the record and because Plaintiffs already had completed a substantial portion of the construction based on the prior permit approvals.

*Elkins*, 527 F. Supp. 2d at 43 n.7 (administrative record citations omitted). Defendants concede that "the District has never denied that the purpose of the search was to obtain evidence of illegal construction, and use that evidence in subsequent enforcement actions." Defs.' Opp'n at 3.

what extent Plaintiffs were damaged by the seizure of their documents, and whether the Individual

Defendants' conduct was "motivated by evil motive or intent, or [ ] involve[d] reckless or callous

indifference" to Plaintiffs' rights. *Smith*, 461 U.S. at 56.

Nonetheless, because Plaintiffs may discover relevant information that "appears

reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and

because the seizures at issue were made during the execution of the administrative search warrant,

Plaintiffs may discover evidence relating to the Defendants' planning and execution of the search

at Plaintiffs' home and the intent of the Individual Defendants in planning and conducting the search.

Under the broad standard governing the scope of discovery, Defendants' assertion that the

documents Plaintiffs seek are not relevant is without merit.

**B.  Privileges**

**1.  Attorney-Client Privilege**

The attorney-client privilege applies where

(1) the holder of the privilege is or sought to be a client;

(2) the person to whom the communication was made is a member of the bar of a court or his subordinate and in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law, legal services, or assistance in some legal proceeding and not for the purpose of committing a crime or tort; and

(4) the privilege has been claimed and not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  The party claiming the privilege bears the

burden of establishing with reasonable certainty that the privilege applies.  *Id*. at 99.

The voluntary disclosure of privileged communications waives the privilege, *Permian Corp. v. U.S.*, 665 F.2d 1214, 1221 (D.C. Cir. 1981), as does the inadvertent disclosure of privileged information.  *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989); *Elliott v. Federal Bur. of Prisons*, 521 F. Supp. 2d 41, 57-58 (D.D.C. 2007).  Once a communication is disclosed, the attorney-client privilege is waived for all documents and communications relating to the subject matter of the disclosure.  *Ideal Elec. Sec. Co., Inc. v. Int'l Fidelity Ins. Co*., 129 F.3d 143, 152 (D.C. Cir. 1997); *In re United Mine Workers of Am. Employee Benefit Plan Litig.*, 159 F.R.D. 307, 309 (D.D.C. 1994).  The district court "retains broad discretion in deciding the appropriate scope of a waiver."  *In re United Mine Workers*, 159 F.R.D. at 309.

Defendants have waived the attorney-client privilege as to those documents and communications that relate to the same subject matter as documents already released to Plaintiffs. Plaintiffs have in their possession copies of five emails:

1.  An email exchange dated November 26, 2002 among counsel, HPO employees, and DCRA employees including:  Ellen McCarthy (HPO), Andrew Saindon (OCC),[5] David Maloney (HPO), Grant Moy (DCRA), Jennifer Longmeyer (OCC), Bruce Brennan (OCC), Theresa Lewis (DCRA), David Clark (DCRA), Vincent Ford (DCRA), and Karen Edwards (DCRA).   In this exchange, Ellen McCarthy wrote, "Obviously, when they complete this punch list, they've basically completed the entire project, and there [will be] no impact from revoking the permit, because they won't need one for any further work."  Pls.' Mot. to Compel, Ex. 6.  This email exchange, as early

---

[5] "OCC" is the D.C. Office of Corporation Counsel, now know as the D.C. Office of the Attorney General.

as November 2002, dealt with the issue of permit revocation.

2. An email dated February 13, 2003, at 1:46 p.m. from Assistant D.C. Corporation Counsel Andrew Saindon to:  David Maloney (HPO), Grant Moy (DCRA), Denzil Noble (DCRA), Bruce Brennan (OCC), Mark Back (OCC) and a response email from David Maloney (HPO) dated February 14, 2003 at 9:33 a.m.   This email exchange discussed whether to file an answer or dispositive motion in a related case in D.C. Superior Court.  Mr. Saindon's email also raised the question, "Would an inspection now be of any use?"  Mr. Maloney responded, "Nor is seeing the interior really germane to us."  Even though Mr. Saindon raised the question of whether to seek an inspection of Plaintiffs' property, the actual subject matter of this email was how to respond to the Superior Court complaint.  Pls.' Mot. to Compel, Ex. 4.  This subject is irrelevant here.

3. An email from counsel Bruce Brennan (OCC) to:  Grant Moy (DCRA), William Bennett (OCC), Matthew Green (DCRA), Arthur Parker (OCC), Charlotte Parker (OCC), Anthony Gagliardi (OCC), Juan Scott (DCRA), Toni Cherry (HPO), and David Maloney (HPO).  This email, dated March 14, 2003 at 3:16 p.m. stated:

> Are MAtt [sic] Green & Bill Bennett coordinating re search warrant?
> All set, with affidavits signed etc.?  IS [sic] the plan to go to judge
> today or Monday?  Please let me know, and alert me to anything I can
> do to keep this moving fast.  As Grant may be aware, Elkins Robbins
> attorney has noted they decline to permit inspection.  Bruce

*See* Pls.' Mot. to Compel, Ex. 10.  This document is identical to Defendants' Document No. 45. Document No. 45 must therefore be produced to Plaintiffs.

4.  An email from Grant Moy (DCRA) to counsel William Bennett (OCC), dated March 18, 2003 at 2:05 p.m., which stated:

> Bill, Attached is the affidavit I have drafted for Denzil Noble to

execute in support of the administrative search warrant. I have based the request upon the respondents' denial to his March 10, 2003, letter requesting entry. I could not use any statement from Juan Scott (a BLRA building inspector) that he was denied access because he did not specifically ask either of the respondents for consent to enter the premises. Please review this and advise what else we need.

*See* Pls.' Mot. to Compel, Ex. 9. This document is identical to Defendants' Document No. 36, except that Document No. 36 also has attached to it a draft search warrant affidavit. Because the attorney-client privilege is waived with regard to Document No. 36, it is also waived as to the attachment. Defendants shall produce Document No. 36 (together with its attachment) to Plaintiffs.

     5. An email from Toni Cherry, an employee of HPO and contract worker for DCRA who directed the search of Plaintiffs' property, to David Maloney (HPO), Lisa Burcham (HPO), Ellen McCarthy (HPO), David Clark (DCRA), Denzil Noble (DCRA), Juan Scott (DCRA), Karen Edwards (DCRA), Andrew Saindon (OCC), William Bennett (OCC), Bruce Brennan (OCC), Theresa Lewis (DCRA), Grant Moy (DCRA), Leila Franklin (DCRA), and Matthew Green (DCRA). This email, dated March 27, 2003 at 5:29 p.m., stated that the search warrant on Plaintiffs' property was executed and who inspected the property. The email attached photos from the inspection. Pls.' Mot. to Compel, Ex. 11. The subject matter of this email is the mere fact that Plaintiffs' property had been inspected, making further information on that fact irrelevant.

     In addition to waiving the privilege as to the documents already in Plaintiffs' possession, Defendants have waived the privilege for all communications "relating to the same subject matter" as these five emails, as relevant here. Plaintiffs broadly characterize the subject matters set forth in the five emails as the planning of the search of Plaintiffs' property, the seizure of and use of the documents, and Plaintiffs' request to complete certain punch list items. *See* Pls.'

Mot. to Compel at 26-27.  The Court finds that the emails were more narrow.  Emails 1, 3, and 4 above deal with efforts to revoke Plaintiffs' building permit, Email 2 deals with how to respond to a D.C. Superior Court complaint, and Email 5 is Ms. Cherry's mere notice that Plaintiffs' property was inspected.  *See Gen. Elec. Co. v. Johnson*, No. 00-2855, 2006 WL 2616187, at *19 (D.D.C. Sept. 12, 2006) (the broad subject matter definition advanced by the party seeking the documents is particularly unwarranted where there is no indication that the party claiming the privilege acted in bad faith or disregarded the sanctity of the attorney-client privilege); *In re United Mine Workers*, 159 F.R.D. at 309 (in its discretion, court may limit the scope of waiver to the same "specific" subject matter as that already disclosed).

Defendants point out that "it is possible that the documents were impermissibly provided to [Plaintiffs] by disgruntled former District employees."  This is completely unclear, but in any event, such an assertion does not preserve the privilege.  The law in this Circuit is clear — even the inadvertent disclosure of privileged information results in the waiver of the privilege for that information and all documents and communications relating to the same subject matter.  *See Elliott*, 521 F. Supp. 2d at 57-58; *In re United Mine Workers*, 159 F.R.D. at 309.

The Court conducted an *in camera* review of the documents and determined that the following documents are covered by the same subject matter as the five emails previously disclosed to Plaintiffs:  Document Nos. 25-29, 31-34,[6] 36, and 45.  The attorney-client privilege has been waived as to these, and they must be produced to Plaintiffs.  The remaining documents sought by Plaintiffs are protected by the attorney-client privilege.

---

[6] With regard to Document No. 33, Defendants shall produce only the single relevant paragraph, the paragraph that begins, "I am off to talk to Civil Enforcement . . . ."

### 2.  Work Product Doctrine

With regard to Document Nos. 28, 32, 34, and 36, Defendants also claim work product privilege.  An attorney's work product prepared or obtained in anticipation of litigation is protected from disclosure under the work product doctrine.  Fed. R. Civ. P. 26(b)(3); *EEOC v. Lutheran Social Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999); *In re Grand Jury Proceedings*, 5 F. Supp. 2d 21 (D.D.C. 1998).  The party asserting the protection bears the burden of establishing that the work product doctrine applies.  *United States v. Constr. Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996).  So long as a document was prepared because of the prospect of litigation, even the factual portions of the document are protected under the work product doctrine.  *Equal Rights Ctr. v. Post Properties, Inc.*, 247 F.R.D. 208, 211 (D.D.C. 2008).  If work product is disclosed, such disclosure waives the privilege for those documents that are disclosed and as to other documents relating to the same subject matter so long as "disclosure of the additional documents would not defeat the purpose of the work product doctrine, which is the promotion of the adversary system by safeguarding the fruits of an attorney's trial preparations from the opponent." *United States v. ex rel. Fago v. M&T Mortgage Corp.*, 242 F.R.D. 16, 19 (D.D.C. 2007) (citing *In re United Mine Workers*, 159 F.R.D. at 310-12).  As a result, generally disclosure only waives work product privilege for the document disclosed.  *Id*.

The work product privilege is qualified and not absolute.  Courts do not recognize the privilege where to do so would undermine the discovery process and deprive the Court of important evidence.  *Ex rel. Fago*, 242 F.R.D. at 19.  The work product privilege also may be overcome on a showing of substantial need, *i.e.*, that the requesting party cannot obtain the information by other means without undue hardship.  *Equal Rights Ctr.*, 247 F.R.D. at 212 (citing

Fed. R. Civ. P. 26(b)(3)(A)).

Plaintiffs argue that some documents were not prepared in anticipation of *this* litigation, *i.e.* they were prepared in anticipation of obtaining the search warrant and thus in anticipation of the administrative proceeding. But the doctrine protects documents prepared in anticipation of litigation; it does not have to be for this district court proceeding. *Gen. Elec.*, 2006 WL 2616187, at *4 (materials prepared in anticipation of "litigation" include materials prepared in anticipation of judicial proceedings, administrative matters, settlement negotiations, and the avoidance of anticipated litigation); *see also Pub. Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 30 (D.D.C. 2002) (in anticipation of "litigation" includes administrative matters; work product doctrine protects documents prepared because of the prospect of litigation), *overruled in part on other grounds*, 276 F.3d 634 (D.C. Cir. 2002).

Even though Document Nos. 28, 32, 34, and 36 can be defined as work product, the Court finds that it will not recognize the privilege as to these documents because to do so would undermine the discovery process, deprive the Court of important evidence, and Plaintiffs cannot obtain the information by other means. *Ex rel. Fago*, 242 F.R.D. at 19; *Equal Rights Ctr.*, 247 F.R.D. at 212. Moreover, the work product privilege has been waived as to Document No. 36 because that Document was previously disclosed to Plaintiffs. *See* Pls.' Mot. to Compel, Ex. 9.

### 3. Deliberative Process Privilege

Defendants also allege that the deliberative process privilege applies to many of the documents sought by Plaintiffs. The deliberative process privilege allows the government to withhold from disclosure documents reflecting "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are

formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). This privilege protects agency documents or communications that are "predecisional" and "deliberative" in nature. *Id.* at 737. This privilege assures that subordinates within an agency feel at liberty to provide the decision-maker with their uninhibited opinions and recommendations without fear of later criticism or ridicule. *Gen. Elec.*, 2006 WL 2616187, at *4 (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States*, 617 F.2d at 866.

There are limits to the deliberative process privilege. The party invoking the privilege is entitled to withhold only the predecisional, deliberative portions of a document. *Gen. Elec.*, 2006 WL 2616187, at *6. Further, the privilege is a qualified privilege, which may be overcome by a showing of sufficient need, considering the relevance of the evidence sought, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by the government. *In re Sealed Case*, 121 F.3d at 737-38. Courts must balance the evidentiary need against the harm resulting from disclosure. *Id.* at 738.

Moreover, because the privilege "was fashioned in cases where the governmental decision making process is collateral to the plaintiff's suit," the privilege does not apply if the cause of action is directed at the government's intent. *In re Subpoena Duces Tecum*, 145 F.3d 1422, 1424 (D.C. Cir.), *modified*, 156 F.3d 1279 (D.C. Cir. 1998); *accord United States v. AT&T*, 524 F. Supp. 1381, 1389-90 (D.D.C. 1981). Here, Plaintiffs' claim for punitive damages centers around the intent of the Individual Defendants — whether the Individual Defendants' conduct was motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiffs' rights. Accordingly, the

deliberative process privilege does not apply in this case.

### C. Deposition Notice

Plaintiffs contend that the Court should compel the District to comply with its deposition notice.  First, the District cannot claim privilege pre-emptively, before any deposition question has been propounded.  Second, the District waived the attorney-client privilege for the topics specified above.  Finally, answers to questions regarding whether and when meetings took place, who was present, and the general subject matter under discussion are not privileged.  Plaintiffs' motion to compel the District to comply with its Rule 30(b)(6) deposition notice will be granted.

### III.  CONCLUSION

For the reasons explained above, Plaintiffs' motion to compel production of documents [Dkt. #53] will be granted in part and denied in part.  Defendants shall produce to Plaintiffs Document Nos. 25-29, 31-34,[7] 36, and 45, and the District shall comply with Plaintiffs' Rule 30(b)(6) deposition notice.  A memorializing order accompanies this Memorandum Opinion.

Date: May 28, 2008                                         /s/
                                            ROSEMARY M. COLLYER
                                            United States District Judge

---

[7] Again, Defendants shall produce only the single relevant paragraph of Document No. 33, the paragraph that begins, "I am off to talk to Civil Enforcement . . . ."