# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **LAURA ELKINS and JOHN ROBBINS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-480 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiffs in this action are Laura Elkins and John Robbins, wife and husband. They obtained building permits and approvals from the D.C. Department of Consumer and Regulatory Affairs ("DCRA") and the D.C. Historic Preservation Office ("HPO") for construction at their historic home on Capitol Hill.  After construction began, city officials believed that Plaintiffs were building in violation of their permits, and they obtained a warrant to conduct an administrative search of Plaintiffs' home in order to find evidence of illegal construction.  Although the warrant did not authorize it, officials seized various documents during the search.  The legality of both the search and the seizure were litigated before the D.C. Office of Administrative Hearings ("OAH"), and the Hearing Officer found that while the search was valid, the seizure of documents was not constitutionally permissible because it was not expressly authorized by the search warrant.  This Court held that collateral estoppel precluded the relitigation of this issue and thus that Plaintiffs' Fourth Amendment rights were violated due to the unreasonable seizure of documents.  *See Elkins v. District of Columbia*, 527 F. Supp. 2d 36, 46-

47 (D.D.C. 2007).  As a result, Plaintiffs seek damages against the District of Columbia and the individually named defendants in this matter.

Defendants move for summary judgment, asserting that (1) the District should be dismissed because the constitutional violation was not caused by any District custom or policy; (2) there is no evidence that the constitutional violation caused any actual damages; and (3) there is no evidence of willfulness or recklessness that would give rise to punitive damages.  As explained below, the District of Columbia will be dismissed as a party and summary judgment will be granted in favor of Defendants on Plaintiffs' claim for damages that were not caused by the illegal seizure alone.  In all other respects, Defendants' request for summary judgment will be denied.

## I.  FACTS

This case arises from Plaintiffs' applications for six building permits for renovations to their home, applications they filed in 2001.  Plaintiffs' home is located in the Capitol Hill Historic District, a designated historic district under the D.C. Historic Landmark and Historic District Protection Act, D.C. Law § 2-144.  The permit applications were reviewed and approved by the HPO and DCRA.  Plaintiffs planned to build a sloped roof over the middle and rear portions of the house, but the applicable historic preservation requirements prohibited a second story and neighbors complained about the construction.  After the permits had been approved, some officials second-guessed the original approvals and sought to stop the project, asserting that Plaintiffs' construction was inconsistent with the historic character of the neighborhood.

DCRA issued various stop-work orders in 2002.  Then, on March 10, 2003, the

District sent Plaintiffs a letter requesting inspection of the property due to complaints of ongoing

construction in violation of a stop-work order.  Plaintiffs refused to consent to inspection, and the

DCRA filed an application for an administrative search warrant, together with an affidavit

alleging probable cause.  The warrant application and affidavit alleged that:

> (1)  On April 24, 2002, a stop-work order was issued, pursuant to
> 12 D.C.M.R. § 117.1, because Plaintiffs were performing structural
> work without an appropriate permit in violation of the
> Construction Codes;
>
> (2)  On May 17, 2002, the District issued a Notice of Violation for
> failure to comply with the April 24 stop-work order;
>
> (3)  On November 13, 2002, a stop-work order was issued because
> Plaintiffs failed to comply with the May 17 notice; and
>
> (4)  On March 4, 7, and 10, 2003, DCRA inspectors visited the
> premises and were either denied entry or were told that no work
> was being performed, despite the presence of workmen, work
> vehicles, and construction supplies.

The affidavit concluded that the District had reason to believe that Plaintiffs were violating the

Construction Codes and such violations posed an imminent threat to the health, safety, and

welfare of the community.  On March 26, 2003, a D.C. Superior Court judge approved the search

warrant.

The warrant authorized a search of the property, but did not describe any items to

be seized.  The next day, the District executed the search warrant.  The officials went throughout

the home, opening drawers, observing, and taking photos.  Officials seized documents, including

a notebook belonging to Ms. Elkins that contained permit and construction records, checking

statements, financial records, and construction loan documents.  The seized documents included

construction plans that varied from those approved by DCRA and HPO.  Defs.' Mem., Ex. 5

(Maloney Dep. at 51).  District officials believed that Plaintiffs were renovating their home pursuant to these unapproved plans.  *Id*.

The District issued a notice of proposed revocation of the six building permits issued to Plaintiffs on December 17, 2003.[1]  Plaintiffs challenged the proposed revocation, and that matter came before OAH.  In the OAH proceedings, Plaintiffs moved to suppress evidence resulting from the administrative search of the property, alleging that the search was without probable cause and the seizure exceeded the scope of the authorized search.

On November 22, 2005, the Hearing Officer found that the search warrant was valid and supported by probable cause — the District had probable cause to believe that Plaintiffs were altering an historic property without proper approval and in violation of a stop-work order.  Pls.' Opp'n, Ex. 7 (OAH Order on Mot. to Suppress at 13-15).  However, the seizure of documents was not constitutionally reasonable because it was not expressly authorized by the search warrant and the consent and plain view exceptions to the warrant requirement did not apply.  *Id*. at 15 & 20-21.   This Court found that the parties were collaterally estopped from relitigating the issues that had been decided by the OAH.  *Elkins*, 527 F. Supp. 2d at 46.

Thus, the Hearing Officer suppressed the illegally seized documents but not the photographs of the home or the testimony and reports of officials as to their observations of the home.  OAH held evidentiary hearings, and on March 20, 2007, OAH issued a final order denying and dismissing the proposed permit revocation.[2]  *See* Pls.' Opp'n, Ex. 11 (OAH Final

---

[1] The District proposed to revoke permit B436647 and amended permits B440371, B440544, B443341, B444561, and B445608.

[2] The OAH Final Order explained:

Order).  The OAH also found that the Plaintiffs were not in compliance with their permits and

ordered construction to bring the property into compliance.  *Id*. at 460.

              In sum, Plaintiffs' Fourth Amendment right to be free from unreasonable seizure

was violated when documents were illegally seized during a search of their home on March 27,

2003.  At this juncture it has not yet been determined which, if any, Defendant may be liable for

Plaintiffs' damages caused by the illegal seizure of documents, nor have the extent of Plaintiffs'

damages been determined.  Defendants include the District and the following individuals in their

personal capacity (collectively the "Individual Defendants"):  Denzil Noble, the Administrator of

the DCRA Building and Land Regulation Administration ("BLRA"); J. Gregory Love, former

BLRA Administrator and Mr. Noble's predecessor; David Maloney, Historic Preservation

Officer; and Inspector Toni Williams-Cherry, an employee of HPO and contract worker for

DCRA who was present at the March 2003 search.  Defendants move for summary judgment,

---

          [T]he construction of a sloped roof of the dimension
proposed by [Plaintiffs] had a potential impact on the historical
neighborhood.  The neighbors' concerns about the impact of the
construction on the neighborhood and on their access to sunlight
and similar factors, were legitimate concerns.  If the [District] had
denied the initial application on this basis, [Plaintiffs] would have
had a difficult road trying to overcome the objections to their
project.
          On the other hand, the concerns were known at the time
[Plaintiffs] initially applied for a building permit, and the [District]
did approve all of the permits notwithstanding the concerns.
[Plaintiffs] endured a nightmare situation in which the [District]
officials dueled amongst themselves over the propriety of the
project, and they sent out mixed messages.  Meanwhile, [Plaintiffs]
have been effectively blocked from completing their work until the
matter has been fully litigated.

*See* Pls.' Opp'n, Ex.11 (OAH Final Order at 44).

asserting that (1) the District should be dismissed because the constitutional violation was not caused by any District custom or policy; (2) there is no evidence that the constitutional violation caused any actual damages; and (3) there is no evidence of willfulness or recklessness that would give rise to punitive damages.  Plaintiffs oppose.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477

U.S. at 249-50 (citations omitted).

## III.  ANALYSIS

### A.  Custom or Policy Under *Monell*

In order to hold a municipality liable for the civil rights violations of its

employees under 42 U.S.C. § 1983,[3] a plaintiff must show not only a violation of his rights under

the Constitution or federal law, but also that the municipality acted in accordance with a

government custom or policy.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978);

*accord Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (applying *Monell* to the

District of Columbia); *Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007)

(same).  A plaintiff must demonstrate an affirmative link between the District's policy and the

constitutional violation alleged.  *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir.

1986).  A single incident is insufficient to impose such liability.  *Reed v. District of Columbia*,

474 F. Supp. 2d 163, 168 (D.D.C. 2007); *see also Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C.

Cir. 1987) ("One instance, however egregious, does not a pattern or practice make.").

Plaintiffs here allege a single instance in which District employees seized

documents without specific warrant authorization to do so.  The District's Rule 30(b)(6)[4] witness

testified that the District has no custom, practice, or policy regarding its agents' or officers'

seizure of documents or other personal effects during the inspection of private residences for

---

[3] Section 1983 provides a cause of action for persons deprived of their constitutional or
federal statutory rights "under color of any statute, ordinance, regulation, custom, or usage, of
any State or Territory or the District of Columbia."  42 U.S.C. § 1983.

[4] *See* Fed. R. Civ. P. 30(b)(6) (a party may notice the deposition of a corporation, agency
or other entity and the named organization must designate someone to testify on its behalf
regarding information known or reasonably available to the organization).

alleged construction permit violations and did not have any such practice at the time of the March 2003 administrative search of Plaintiffs' home. Defs.' Mem. in Supp. of Summ. J. ("Defs.' Mem."), Ex. 12 (Dep. of Don Masoero at 55). In fact, the District's execution of an administrative warrant like the one here appears to be a rarity. Two of the Individual Defendants testified at their depositions that they were not involved in any other administrative searches either before or after the March 2003 search of Plaintiffs' home. *See, e.g.*, Defs.' Mem., Ex. 11 (Love Dep. at 17); *id.*, Ex. 9 (Noble Dep. at 31).

Plaintiffs fail to address the "custom or policy" issue in their response to Defendants' motion for summary judgment. Having failed to contest these facts and this argument, they are deemed conceded. *See* LCvR 7(h); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.")). Thus, summary judgment will be granted in favor of the District of Columbia.

Plaintiffs also allege that the District should be liable for failing to train and supervise its employees. To recover on a failure to train or supervise claim, a plaintiff must establish "that the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that the policymakers can be said to have been deliberately indifferent to the need." *Rogala*, 161 F.3d at 56. Because Plaintiffs make this allegation for the first time in their response to Defendants' motion for summary judgment, *see* Pls.' Opp'n at 21, in fact they are seeking leave to amend their

Complaint to include such an allegation.

While leave to amend a complaint should be freely granted when justice so requires, *see* Fed. R. Civ. P. 15(a), a motion to amend may be denied if a court finds undue delay or if such amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Complaint was filed in this case in 2004, and discovery closed August 14, 2008; it is simply much too late to amend. Moreover, Plaintiffs fail to point to any evidence that the need for more or different training or supervision should have been obvious to the District. After all, as noted above, administrative searches like the one on Plaintiffs' home are so uncommon that two Individual Defendants cited the search as a one-time event. Leave to amend to add a claim against the District for failure to train or supervise will be denied, and the District will be dismissed as a party in this case.

### B. Causation and Compensatory Damages

#### 1. *Compensatory Damages*

Compensatory damages may include out-of-pocket loss, impairment of reputation, humiliation, and mental anguish and suffering. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986). Plaintiffs allege that they are entitled to approximately $5,000,000 in compensatory damages including: legal fees and credit expenses for borrowing to pay legal fees; increased construction loan expenses due to construction delays; increased heating costs due to their inability to finish construction and seal the home; rent for storage of household goods during the extended construction period; loss of income; medical expenses;[5] and pain and

---

[5] Plaintiffs indicated that they produced all of their relevant medical records to Defendants during discovery, and by May 19, 2008 Minute Order the Court ordered that Plaintiffs may not introduce any additional medical records at trial.

suffering.  Defendants argue that none of these damages was *caused by* the illegal seizure.

    *2.  Causation*

    The purpose of a damage award under § 1983 is "to compensate persons for injuries that are caused by the deprivation of constitutional rights."  *Carey v. Piphus*, 435 U.S. 247, 254 (1978).  Nominal damages can be awarded for the deprivation of a constitutional right without proof of actual injury, but substantial damages can be awarded only to compensate for actual injury.  *Id.* at 266 (awarding nominal damages for a due process violation even though no injury was proven); *see also Memphis*, 477 U.S. at 308 n.11 (nominal damages, not damages based on the abstract value of a constitutional right, are permissible under § 1983).

    In this case, the only constitutional right at issue is Plaintiffs' Fourth Amendment right to be free from an unreasonable seizure, and the only violation of that right was the seizure of documents from Plaintiffs' home during the legal execution of a valid search warrant.  The illegal seizure alone supports a claim for nominal damages.  *See Carey*, 435 U.S. at 266.  Further, if Plaintiffs can prove that the seizure caused actual injury, the seizure alone can support a claim for compensatory damages.  *See id*.

    Defendants erroneously argue that Plaintiffs have not presented any evidence of actual damages caused by the illegal seizure.  In fact, Plaintiffs claim that as a "direct result of Defendants' actions" they suffered emotional damages.  Pls.' Opp'n at 6.  They allege that their reputations were impaired and that they suffered humiliation and mental anguish.  *Id.*, Ex. 1 (Elkins Decl. ¶¶ 25 & 27); Ex. 2 (Robbins Decl. ¶¶ 17 & 21).  Ms. Elkins asserts that "these events [have] created ongoing physical and emotional stress-related disorders" for which she sought medical care.  *Id.*, Ex. 1 (Elkins Decl. ¶ 28).  Plaintiffs also incurred attorney fees, some

of which were associated with the motion to suppress in the OAH proceeding.   There is a genuine issue of material fact regarding whether the seizure alone caused injury to Plaintiffs and regarding the extent and nature of such injury.

Plaintiffs also claim that they were injured as a result of the permit revocation proceeding.  Pls.' Opp'n at 3 ("District officials violated Plaintiffs' Fourth Amendment rights . . . and then used the documents to institute an unsuccessful proceeding to revoke Plaintiffs' building permits."); *id.* at 8 ("The revocation proceeding was thus the direct result of Defendants' unlawful seizure of Elkins/Robbins's personal papers."); Defs.' Mem., Ex. 19 (Robbins Dep. at 50-52) (damages were suffered as a result of the revocation proceedings).  Defendants argue that the seizure was not the proximate cause of any injury to Plaintiffs resulting from the permit revocation proceeding.[6]

Tort law proximate cause principles apply to § 1983 actions.  *Murray v. Earle*, 405 F.2d 278, 290 (5th Cir. 2005); *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999).[7]  Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."  *Malley v. Briggs*, 477 U.S. 335, 345 n.7 (1986) (citing *Monroe v. Pape*, 365 U.S. 167, 187 (1961), *overruled on other grounds, Monell*,

---

[6] Due to the broad scope of discovery under Federal Rule of Civil Procedure 26(b), the Court permitted discovery of evidence relating to Defendants' planning and execution of the search at Plaintiffs' home because the document seizure at issue was made during the execution of the search warrant.  *See Elkins v. District of Columbia*, 250 F.R.D. 20, 24 (D.D.C. 2008) (citing Fed. R. Civ. P. 26).  The scope of discovery is unrelated to the questions of causation presented here.

[7] The fruit of the poisonous tree doctrine does not apply to § 1983 cases.  *Townes*, 176 F.3d at 145 (the fruit of the poisonous tree doctrine is an exclusionary rule created to safeguard Fourth Amendment rights via its deterrent effect on law enforcement; it is not a personal constitutional right); *accord Reich v. Minnicus*, 886 F. Supp. 674, 681-82 (S.D. Ind. 1993).

436 U.S. 658 (1978)).[8]  Proximate cause requires both a causal relationship between the

negligent act and the plaintiff's injury and foreseeability of the injury.  *Hundley v. District of*

*Columbia*, 494 F.3d 1097, 1104 (D.C. Cir. 2007).  Courts have held that a victim of an

unreasonable seizure may recover damages directly related to the invasion of his privacy, but not

for injuries resulting from the discovery of incriminating evidence and consequent prosecution.

*Hector v. Watt*, 235 F.3d 154, 161 (3d Cir. 2001); *Townes*, 176 F.3d at 148.

        In *Hector*, for example, the plaintiff sued state troopers under § 1983 for the

unlawful seizure of hallucinogenic mushrooms from the plaintiff's airplane.  In the underlying

criminal case, the drug evidence was suppressed and the prosecution was dismissed.  In the

§ 1983 case, the plaintiff sought the costs incurred while defending against the prosecution  as

damages for the unlawful seizure.  The Third Circuit held that the plaintiff could not recover

such damages.  First, the court noted that its decision must be guided by analogous tort law. 235

F.3d at 155-56 (citing *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (in § 1983 actions, tort law

defines the elements of damages and prerequisites for recovery)).  If the § 1983 claim were

---

        [8] A tortfeasor is relieved from liability if there is an intervening and superseding cause, an
"act of a third person or other force which by its intervention prevents the actor from being liable
for harm to another which his antecedent wrongful act was a substantial factor in bringing
about."  *Murray*, 405 F.2d at 291 (citing Restatement 2d of Torts § 440-1 (1965)).  However,
courts are in conflict regarding when exactly official conduct counts as an intervening cause.
*Hector v. Watt*, 235 F.3d 154, 161 (3d Cir. 2001).  *Compare Malley*, 477 U.S. at 344 n.7
(permitting § 1983 suit to proceed against officer alleging that the officer submitted insufficient
evidence to support a search warrant because judge's decision to issue warrant did not break the
causal chain between the warrant application and the improvident arrest) *with Townes*, 176 F.3d
at 147 (the chain of causation between a police officer's arrest and a subsequent conviction is
broken by an intervening exercise of independent judgment, the judge's decision not to suppress
evidence); *see generally Hector*, 235 F.3d at 163 (Nygaard, J., concurring) (collecting conflicting
cases).  The Court need not address the superseding cause issue, as Defendants do not rely upon
this theory.

treated like a false arrest tort claim, the plaintiff's suit would fail because false arrest does not permit damages incurred after indictment. *Id*. at 156. If the claim were treated like a malicious prosecution claim, the claim would fail because the plaintiff could not show that he was innocent of the crime charged. *Id*. And, if the claim were treated like a trespass, the claim would fail because there is no common law authority supporting damages of the type the plaintiff sought. *Id*. Second, the court explained that its decision was guided by the requirement that liability should be assessed "in terms of the risk that is constitutionally relevant." *Id*. at 157 (citing *Carey*, 435 U.S. at 263-64). "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Id*. (quoting *Townes*, 176 F.3d at 148). Accordingly, the court held that the plaintiff could not recover the litigation expenses incurred because police officers discovered criminal conduct during an unconstitutional search. *Id*.; *accord Townes*, 176 F.3d 138 (taxicab passenger had right to be free from warrantless and unreasonable seizure, but he could only recover damages directly related to the invasion of privacy; he could not recover for injuries resulting from the discovery of incriminating evidence and the subsequent prosecution).

Like the plaintiffs in *Hector* and *Townes*, Plaintiffs here can recover damages directly related to the invasion of their privacy — the illegal seizure of documents — but not for injuries resulting from the seizure of evidence and subsequent OAH proceeding. While Plaintiffs were subject to a permit revocation proceeding and not a criminal prosecution, a similar analysis applies. Plaintiffs' § 1983 claim could be deemed analogous to a tort claim for malicious prosecution. But Plaintiffs could not maintain such a claim because they could not show their "innocence." Despite denying the District's request to revoke the permits, the Hearing Officer

found that the District was legitimately concerned that the construction of the sloped roof was in violation of historic preservation rules and the Notice of Violation that gave rise to the revocation proceeding was valid and issued in good faith.  Pls.' Opp'n, Ex. 11 (OAH Final Order at 31 & 44).  Thus, a malicious prosecution claim would fail.  Further, the constitutionally relevant harm that occurred here was the invasion of Plaintiff's privacy due to the illegal seizure of their documents, not the discovery of incriminating evidence (the unapproved plans) and subsequent OAH proceeding.  Plaintiffs may recover for the invasion of privacy alone.

Moreover, Plaintiffs cannot recover damages due to the revocation proceeding because the illegal seizure of documents in this case cannot be said to have "caused" the permit revocation proceeding.  Plaintiffs claim that the Notice of Proposed Revocation demonstrates that the revocation proceeding was based on the illegally seized documents because the Notice refers to private construction plans revealing construction beyond the scope of the building permits.  *Id.*, Ex. 1 (Elkins Decl. ¶ 23).  But the Notice also refers to evidence obtained by the legal inspection of the property and the officers' observation of replacement walls that did not match the construction allowed under the building permits.  Defs.' Mem., Ex. 15 (Notice at 2).  Also, inspecting officers observed and photographed construction of a second floor bathroom in an area described as "unfinished" on the plans Plaintiffs submitted for approval.  *Id.* at 3.  In other words, there was evidence of permit violation independent of the illegally seized documents.  Also, when the Hearing Officer suppressed the seized documents on November 22, 2005, he expressly noted that testimony of the officials that conducted the legal search as well as photographs of Plaintiffs' home would not be suppressed.  Subsequently, the Hearing Officer held evidentiary hearings and issued its final order denying the proposed permit revocation on

-14-

March 20, 2007.  Because the administrative proceeding continued and evidence was presented *after* the documents had been suppressed, the illegal seizure of documents could not have been the but-for cause of the permit revocation proceeding.

Plaintiffs also argue erroneously that the illegal seizure caused construction delays which cost them considerably.  The seizure of documents could not have caused construction delays because the April 24, 2002 stop-work order already was in place on March 27, 2003 when the seizure occurred.  Plaintiffs contend that the stop-work order was invalid.  *Id.*, Ex. 16 (Elkins Dep. at 68-69); *id.*, Ex. 19 (Robbins Dep. at 41).  This contention is without merit, as OAH held that the May 17, 2002 Notice of Violation, which was based on the April 24, 2002 stop-work order, was validly issued.  Pls.' Opp'n, Ex. 11 (OAH Final Order at 31).

Accordingly, Plaintiffs are entitled to nominal damages for the violation of their Fourth Amendment right to be free from unreasonable seizure.  Because Plaintiffs present an issue of fact regarding whether they are entitled to compensatory damages caused by the seizure alone, summary judgment will be denied on that issue.  Summary judgment will be granted in favor of Defendants on Plaintiffs' claim for damages caused by actions other than the seizure alone, *e.g.*, damages caused by the revocation proceeding or by the April 24, 2002 stop-work order.

### C.  Punitive Damages

Plaintiffs also seek punitive damages against the Individual Defendants.  Even if Plaintiffs cannot prove that they are entitled to compensatory damages, because they are entitled to nominal damages they can seek punitive damages.  *See Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2622 (2008) (an award of mere nominal damages is sufficient to support a further

award of punitive damages).  However, Plaintiffs can recover punitive damages against

individuals only if their conduct was "motivated by evil motive or intent, or when it involve[d]

reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461

U.S. 30, 56 (1983).  Defendants move for summary judgment on the issue of punitive damages,

asserting that "there is no evidence in the record to show that an individual defendant possessed

the necessary state of mind to support an award of punitive damages."  Defs.' Mem. at 25.

Summary judgment is seldom granted when there is a question regarding state of

mind.  *See Robinson v. Diamond Hous. Corp.*, 643 F.2d 853, 861 (D.C. Cir. 1972) ("[Q]uestions

of motivation are particularly inappropriate for resolution on a motion for summary judgment").

Plaintiffs argue that the Defendants' principal purpose in obtaining a search

warrant and entering their home on March 27, 2003 was to seize documents which, Defendants

hoped, would support revocation of Plaintiffs' building permits.  Pls.' Opp'n at 11.  The District

concedes that the purpose of the search warrant was "to determine the scope of construction at

the property, and to discover if any construction work had occurred since the issuance of the

stop-work orders and in violation of the zoning regulations."  Defs.' Mem. at 9.  However, it is

not the motive of the Individual Defendants in *obtaining the search warrant or conducting the*

*search* that is the issue here.  The search was legal and properly based on probable cause.  Rather,

the issue is whether the Individual Defendants' conduct in *seizing the documents* involved "evil

motive" or "reckless or callous indifference" to Plaintiffs' Fourth Amendment rights.  *See Smith*,

461 U.S. at 56.  A question of fact exists regarding whether any Individual Defendant acted with

reckless disregard to the fact that the search warrant did not authorize the seizure of Plaintiffs'

documents.  A prior draft of the warrant application included a request for seizure authorization,

and yet the final draft did not include such a request.  Inspector Cherry seized documents

anyhow.  These circumstance raise the question of whether the seizure was done recklessly.

Summary judgment cannot be granted on the issue of punitive damages.

### D.  Personal Involvement of Individual Defendants

Only Individual Defendants[9] who were personally involved in the seizure of the

documents can be liable for damages based on such illegal seizure.  Public officials are not

vicariously liable for the actions of their subordinates; respondeat superior liability does not

apply in § 1983 cases.  *Haynesworth v. Miller*, 820 F.2d 1245, 1259 (D.C. Cir. 1987).  To

implicate supervisory liability under § 1983, a plaintiff must establish a high degree of fault.  *Id*.

at 1261.  Mere negligence is not enough.  *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C.

Cir. 2004).  "A supervisor who merely fails to detect and prevent a subordinate's misconduct,

therefore, cannot be liable for that misconduct."  *Id*.  The supervisor must know about the

conduct and facilitate, approve, or condone it, or "turn a blind eye for fear of what he might see."

*Id*.  A § 1983 action cannot be maintained against an official in his personal capacity if the

official was not personally involved in the decisions affecting the plaintiff's constitutional rights.

*Brown v. District of Columbia*, 514 F.3d 1279, 1285 (D.C. Cir. 2008).

Defendants contend that Plaintiffs have failed to point to any evidence linking

---

[9] The Individual Defendants do not dispute that Plaintiffs' Fourth Amendment right to be free from an unreasonable seizure were clearly established.  *See LeClair v. Hart*, 800 F.2d 692, 696 (7th Cir. 1986) (IRS agents who seized documents outside the scope of a search warrant were not entitled to qualified immunity because the plaintiffs' Fourth Amendments right to be free from unreasonable seizure was clearly established).  Thus, they do not assert qualified immunity.  Instead, some of the Individual Defendants contend that they were not personally involved in the seizure.

Messrs. Love, Noble, and Maloney to the seizure.[10]   First, Defendants claim that none of these

individuals can be liable for the seizure because they were not present at the search when the

officers conducting the search made a spur of the moment decision to seize documents.

Inspector Cherry testified at her deposition that during the search she asked Juan Scott, a building

inspector for the District who was part of the search team, whether it was permissible to go

through drawers and seize items related to the construction at Plaintiffs' home.   Defs.' Mem., Ex.

7 (Cherry Dep. at 86-90).   Mr. Scott asked the question of one of the District police officers, and

the officer approved the seizure of such items.   *Id.*; *see id.*, Ex. 20 (Scott Dep. at 68) (police

officers on the scene gave permission to seize documents during the search).   However, there is

evidence to contradict this theory that the decision to seize documents was made on the "spur of

the moment."   Grant Moy, Deputy General Counsel at DCRA during the time period relevant to

this suit, testified at his deposition that an earlier draft of the warrant application included a

request to seize documents.   *Id.*, Ex. 14 (Moy Dep. at 31); *see also* Pls.' Mem., Ex. 13 (draft

affidavit).   The final warrant application did not include such a request.

Defendants also make specific arguments regarding the personal involvement of

each of these men.   With regard to Mr. Love, Defendants claim that he could not have any

liability for the illegal seizure because he left his employment with the District in November

2002 before the search warrant was executed in March 2003.   Mr. Love previously moved for

---

[10] Inspector Cherry accompanied the District's attorney to Superior Court to apply for the
warrant, she was present at the search, and she actually seized documents.  Pls.' Opp'n, Ex. 6
(Cherry Dep. at 41, 204).  Thus, her personal involvement is established.  While she alleges that
Ms. Elkins "voluntarily" provided the documents, this allegation does not excuse the seizure
because OAH already determined that the consent exception to the warrant requirement does not
apply.  *Id.*, Ex. 7 (OAH Order on Mot. to Suppress at 15).

summary judgment on this ground.  *See* Love's Mot. for Summ. J. [Dkt. #63].  The Court denied

the motion without prejudice, finding that genuine issues of fact existed.  *See* Order [Dkt. # 75].

There is some evidence that Mr. Love was involved in the decision to seize Plaintiffs'

documents.  *See* Pls.' Opp'n, Ex. 10 (Ford Aff. ¶ 20) (In May 2002, "Mr. Love instructed me to

"find a way" to stop work at #20 9th Street, N.E. and force Mr. Robbins and Ms. Elkins to go

back to the Office of Historic Preservation for re-approval of their work.");  *id*., Ex. 2 (email

dated 10/28/02 from counsel to Mr. Love and others regarding topics for Oct. 29, 2002 meeting

such as what "additional info" was needed and what "steps" to take next).   Thus, there is an

issue of fact regarding Mr. Love's potential liability for damages.

          Defendants also assert that although Mr. Noble signed the warrant application, he

was not involved in the execution of the search, the decision to seize documents, or the seizure

itself and thus he cannot be liable for the illegal seizure.  Defs.' Mem., Ex. 9 (Noble Dep. at 38-

40, 53).  In fact, Mr. Noble's deposition testimony was equivocal.  On one hand, he stated that he

believed that the purpose of the search warrant was only to inspect the property.  *Id*. at 64.  On

the other, he stated that one of the purposes of the search warrant was to seize documents.  *Id*. at

62.  Also, a prior draft of the search warrant affidavit written for Mr. Noble's signature included

a request that the warrant authorize the seizure of documents.  Pls.' Mem., Ex. 13 (draft

affidavit).  There is an issue of fact regarding Mr. Noble's personal involvement with the

decision to seize documents.

          Defendants also argue that Mr. Maloney was not involved in the decision to seek a

search warrant, in preparing the warrant application, or in searching the house.  Defs.' Mem.,

5 (Maloney Dep. at 29 & 32).  Plaintiffs argue that Mr. Maloney's goal was to stop the work

being done on Plaintiffs' home and that he wanted to revoke the building permits in order to accomplish this.  Pls.' Opp'n, Ex. 20 (Maloney Dep. at 42, 58).  He supervised Inspector Cherry, who seized the documents, and he was involved in reviewing the seized documents.  *Id*. at 57-58. Even so, it is not the stop-work orders, the request for revocation of the building permits, or the reviewing of the seized documents that is actionable here.  Plaintiffs' cause of action is based solely on the illegal seizure of documents.  And, Mr. Maloney cannot be held liable merely because he supervised Inspector Cherry.  *Int'l Action Ctr.*, 365 F.3d at 28 (to establish supervisory liability, the supervisor must know about the conduct and facilitate, approve, or condone it, or turn a blind eye; negligence is insufficient).

Even so, Mr. Maloney was the driving force behind the search warrant and the proposed revocation of the building permits.  *See Elkins*, 527 F. Supp. 2d at 41 ("Mr. Maloney [ ] seems to have organized a campaign against the construction on the Property").  The actual request for revocation of the permits was partly Mr. Maloney's idea.  Pls.' Opp'n, Ex. 20 (Maloney Dep. at 57-59).  Critically, he was involved in conversations with the District's attorney regarding the search warrant and whether the warrant should authorize the seizure of documents.  *Id*., Ex. 3 (Maloney Dep. at 40).  When asked why the attorney wanted to make sure that the warrant authorized the seizure, Mr. Maloney responded, "I assumed I guess that it was part of the point of having the search."  *Id*. at 42.  There is an issue of fact regarding Mr. Maloney's personal involvement with the decision to seize documents despite the lack of authorization to do so.

### E.  Damages Suffered by Plaintiffs' Children

Plaintiffs point to harm to their children by noting that "[t]he children have lost

confidence in Mr. Robbins as a father and his ability to provide a secure home against

unwarranted invasions by government officials . . ." Pls.' Opp'n at 6.  The children are not

plaintiffs here, and their damages are not at issue.

## IV.  CONCLUSION

For the reasons explained above, Defendants' Motion for Summary Judgment

[Dkt. #79] will be granted in part and denied in part as follows: The District of Columbia is

dismissed as a defendant in this case.  Further, Plaintiffs are entitled to nominal damages for the

violation of their Fourth Amendment right to be free from unreasonable seizure.  Because

Plaintiffs present an issue of fact regarding whether they are entitled to compensatory damages

caused by the seizure alone, summary judgment will be denied on that issue.  Summary judgment

will be granted in favor of Defendants on Plaintiffs' claim for damages caused by actions other

than the seizure alone, *e.g.*, damages caused by the revocation proceeding or by the April 24,

2002 stop-work order.  Summary judgment will be denied in all other respects.  A memorializing

order accompanies this Memorandum Opinion.


Date: April 27, 2009                                    _____/s/_____
                                                        ROSEMARY M. COLLYER
                                                        United States District Judge