# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **LAURA ELKINS and JOHN ROBBINS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-480 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Defendants, including Denzil Noble, the Administrator of the D.C. Department of Consumer and Regulatory Affairs ("DCRA") Building and Land Regulation Administration ("BLRA"); J. Gregory Love, former BLRA Administrator; David Maloney, Officer with D.C.'s Historic Preservation Office ("HPO"); and Inspector Toni Williams-Cherry, an employee of HPO and contract worker for DCRA, seek reconsideration of this Court's April 27, 2009 Opinion and Order granting in part and denying in part their motion for summary judgment. *See* Op. & Order [Dkt. ## 83 & 84] ("April 27, 2009 Opinion"). The Court clarifies that at trial Plaintiffs may pursue only a claim for damages arising from the seizure of documents in violation of the Fourth Amendment and not a claim for "invasion of privacy." Further, because Plaintiffs have presented insufficient evidence to show that David Maloney was personally involved in the constitutional violation at issue here, Mr. Maloney will be dismissed as a defendant in this case. In all other respects, the motion to reconsider will be denied.

# I. FACTS[1]

Plaintiffs in this action are Laura Elkins and John Robbins, wife and husband. They obtained building permits and approvals from the DCRA and the HPO for construction at their historic home on Capitol Hill.  After construction began, city officials believed that Plaintiffs were building in violation of their permits, and they obtained a warrant to conduct an administrative search of Plaintiffs' home in order to find evidence of illegal construction. Although the warrant did not authorize it, officials seized various documents during the search. The legality of both the search and the seizure were litigated before the D.C. Office of Administrative Hearings ("OAH"), and the Hearing Officer found that while the search was valid, the seizure of documents was not constitutionally permissible because it was not expressly authorized by the search warrant.  This Court held that collateral estoppel precluded the relitigation of this issue and thus that Plaintiffs' Fourth Amendment rights were violated due to the unreasonable seizure of documents.  *See Elkins*, 527 F. Supp. 2d at 46-47.  Plaintiffs seek nominal, compensatory, and punitive damages for this Fourth Amendment violation.

Defendants moved for summary judgment.  On April 27, 2009, the Court (1) recognized that Plaintiffs are entitled to nominal damages; (2) found an issue of fact regarding whether Plaintiffs are entitled to compensatory damages with regard to the unconstitutional seizure alone; and (3) granted summary judgment in favor of Defendants on Plaintiffs claim for damages caused by actions other than the seizure.  The Court held:

> Plaintiffs are entitled to nominal damages for the violation of their
> Fourth Amendment right to be free from unreasonable seizure.

---

[1] The facts are laid out in more detail in the Court's prior opinion.  *See Elkins v. District of Columbia*, 527 F. Supp. 2d 36 (D.D.C. 2007).

> Because Plaintiffs present an issue of fact regarding whether they
> are entitled to compensatory damages caused by the seizure alone,
> summary judgment will be denied on that issue.  Summary
> judgment will be granted in favor of Defendants on Plaintiffs'
> claim for damages caused by actions other than the seizure alone,
> *e.g.*, damages caused by the revocation proceeding or by the April
> 24, 2002 stop-work order.

April 27, 2009 Opinion at 21.  The Court also denied summary judgment on the issue of punitive

damages as follows:

> A question of fact exists regarding whether any Individual
> Defendant[2] acted with reckless disregard to the fact that the search
> warrant did not authorize the seizure of Plaintiffs' documents.  A
> prior draft of the warrant application included a request for seizure
> authorization, and yet the final draft did not include such a request.
> Inspector Cherry seized documents anyhow.  These
> circumstance[s] raise the question of whether the seizure was done
> recklessly.   Summary judgment cannot be granted on the issue of
> punitive damages.

*Id*. at 16-17.

Defendants now move for reconsideration of those portions of the Court's

decision denying summary judgment.  In essence, they raise two issues.  First, they contend that

the Court improperly found that Plaintiffs have an invasion of privacy claim.  Second, they claim

that the evidence of the Defendants' personal involvement in the seizure is too scanty to

overcome their motion for summary judgment.  Plaintiffs oppose.

## II.  STANDARD OF REVIEW

A Rule 59(e) motion is discretionary and need not be granted unless the district

---

[2] The Court granted the motion for summary judgment in favor of the District of
Columbia and it was dismissed as a defendant in this case.  The "Individual Defendants"
referenced in the April 27, 2009 Opinion are the remaining Defendants in this case, Messrs.
Noble, Love, and Maloney and Ms. Williams-Cherry.

court finds that "there is an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines*

*Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208

(D.C. Cir. 1996)).  A Rule 59(e) motion is not "simply an opportunity to reargue facts and

theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38

(D.D.C. 1995).  Nor is it an avenue for a "losing party . . . to raise new issues that could have

been raised previously." *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).

### III.  ANALYSIS

### A.  Clarification Regarding Remaining Cause of Action

Defendants erroneously contend that the Court has now permitted Plaintiffs to

assert an invasion of privacy claim in addition to their claim for damages for the violation of their

Fourth Amendment right to be free from unreasonable seizure.  They misconstrue that portion of

the Court's Opinion that stated:

> Like the plaintiffs in *Hector* and *Townes*, Plaintiffs here can
> recover damages directly related to the invasion of their privacy —
> the illegal seizure of documents — but not for injuries resulting
> from the seizure of evidence and subsequent OAH proceeding. . . .
> [T]he constitutionally relevant harm that occurred here was the
> invasion of Plaintiff's privacy due to the illegal seizure of their
> documents, not the discovery of incriminating evidence (the
> unapproved plans) and subsequent OAH proceeding.  Plaintiffs
> may recover for the invasion of privacy alone.

April 27, 2009 Opinion [Dkt. # 83] at 13-14.  The Court clarifies that if Plaintiffs can prove at

trial that the unconstitutional seizure of documents caused actual injury, the seizure can support a

claim for compensatory damages.  That is, Plaintiffs may proceed to trial solely based on their

claim for damages caused by the seizure of documents in violation of the Fourth Amendment.

Plaintiffs have alleged no claim grounded in the law of tort, such as invasion of privacy, or any other legal theory.[3]  Plaintiffs may not proceed on any claim for damages caused by actions other than the seizure alone, for example, on any claim for damages caused by the search of their home including the entering of children's rooms and the opening of drawers, damages caused by the permit revocation proceeding, damages caused by the April 24, 2002 stop-work order, or damages caused by any other stop-work order.

### B.  Damages Caused Solely by the Seizure

Defendants also argue that none of the damages alleged by Plaintiffs was *caused solely by* the illegal seizure.  "There is simply no way for the Court to award separate damages from Ms. Cherry's acquisition of the notebook (an act taking a few seconds at most), in light of the claimed emotional damages from the overarching invasion of privacy authorized by the valid search warrant.  The former is subsumed in the later."  Defendants previously raised this issue in their motion for summary judgment.  The Court ruled that this is a factual question for trial.  The April 27, 2009 Opinion explained:

> Defendants erroneously argue that Plaintiffs have not presented any evidence of actual damages caused by the illegal seizure.  In fact, Plaintiffs claim that as a "direct result of Defendants' actions" they suffered emotional damages.  They allege that their reputations were impaired and that they suffered humiliation and mental anguish.  Ms. Elkins asserts that "these events [have] created ongoing physical and emotional stress-related disorders" for which she sought medical care.  Plaintiffs also incurred attorney fees, some of which were associated with the motion to suppress in the

---

[3] The "invasion of privacy" language must be understood in context.  The Court followed the reasoning of *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) and *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2001).  The court in Townes explained that "*[t]he evil of an unreasonable search or seizure is that it invades privacy*, not that it uncovers crime, which is no evil at all." *Townes*, 176 F.3d at 148 (*quoted in Hector*, 235 F.3d at 161) (emphasis added).

> OAH proceeding. There is a genuine issue of material fact
> regarding whether the seizure alone caused injury to Plaintiffs and
> regarding the extent and nature of such injury.

April 27, 2009 Opinion at 10-11 (internal citations omitted). Again, there is an issue of fact

regarding whether the seizure alone caused injury to Plaintiffs and, if so, what the extent and

nature of such injury was.

### C.  Individual Liability

Defendants contend that Plaintiffs have failed to point to any evidence that

Messrs. Love, Noble, and Maloney were personally involved in the unconstitutional seizure at

issue here. A § 1983 action cannot be maintained against an official in his personal capacity if

the official was not personally involved in the decisions affecting the plaintiff's constitutional

rights. *Brown v. District of Columbia*, 514 F.3d 1279, 1285 (D.C. Cir. 2008). Public officials

are not vicariously liable for the actions of their subordinates; respondeat superior liability does

not apply in § 1983 cases. *Haynesworth v. Miller*, 820 F.2d 1245, 1259 (D.C. Cir. 1987). To

implicate supervisory liability under § 1983, a plaintiff must establish a high degree of fault. *Id.*

at 1261. Mere negligence is not enough. *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C.

Cir. 2004). "A supervisor who merely fails to detect and prevent a subordinate's misconduct,

therefore, cannot be liable for that misconduct." *Id*. The supervisor must know about the

conduct and facilitate, approve, or condone it, or "turn a blind eye for fear of what he might see."

*Id*.

Defendants argue that the mere scintilla of evidence raised by Mr. Maloney's

deposition testimony is insufficient to overcome summary judgment. On reconsideration, the

Court agrees. Defendants argue that Mr. Maloney was not involved in the decision to seek a

search warrant, in preparing the warrant application, in searching the house, or in seizing the

documents.  The Court found in its April 27, 2009 Opinion that there was a factual question

regarding Mr. Maloney's involvement:

> Critically, he was involved in conversations with the District's
> attorney regarding the search warrant and whether the warrant
> should authorize the seizure of documents.  When asked why the
> attorney wanted to make sure that the warrant authorized the
> seizure, Mr. Maloney responded, "I assumed I guess that it was
> part of the point of having the search."  There is an issue of fact
> regarding Mr. Maloney's personal involvement with the decision to
> seize documents despite the lack of authorization to do so.

April 27, 2009 Opinion at 20 (internal citations omitted).  A closer examination of Mr.

Maloney's deposition testimony reveals that when Mr. Maloney discussed the seizure of

documents with counsel for the District of Columbia, it was counsel (and not Mr. Maloney) who

"wanted to make sure that [the search warrant] was properly executed in order to cover the

seizure of documents."  Pls.' Opp'n [Dkt. # 80], Ex. 3 (Maloney Dep. at 41).  When asked,

"What was your understanding as to why he wanted to have a seizure of documents?" Mr.

Maloney responded, "I assumed I guess that it was part of the point of having the search."  *Id*. at

42.  This testimony alone is insufficient to support Plaintiffs' allegation that Mr. Maloney was

personally involved in the seizure of documents without a warrant.  *See Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247 (1986) (nonmoving party must establish more than the mere

existence of a scintilla of evidence).  Plaintiffs point to no other evidence implicating Mr.

Maloney.  It is not relevant to Plaintiffs' claim (for damages caused by the seizure) that Mr.

Maloney sought to stop work on Plaintiffs' property or that he sought to revoke Plaintiffs'

building permits.  And while Mr. Maloney supervised Ms. Cherry who participated actively in

the seizure of the documents, a mere allegation of a supervisory role is insufficient to impose

liability on Mr. Maloney. *See Int'l Action Ctr.*, 365 F.3d at 28 (to establish supervisory liability,

the supervisor must know about the conduct and facilitate, approve, or condone it, or turn a blind

eye; negligence is insufficient). Because Plaintiffs' have failed to present any evidence tying Mr.

Maloney to the unconstitutional seizure, Mr. Maloney will be dismissed as a defendant.

       With regard to Mr. Noble, Defendants again argue that the evidence linking him

to the seizure is insufficient to go to trial. In the April 27, 2009 Opinion, the Court held that

there was an issue of fact regarding Mr. Noble's personal involvement with the decision to seize

documents because (1) Mr. Noble signed the warrant application; (2) he testified in his

deposition that one of the purposes of the search warrant was to seize documents; and (3) a prior

draft of the search warrant affidavit written for Mr. Noble's signature included a request that the

warrant authorize the seizure of documents. *See* April 27, 2009 Opinion at 19. Defendants'

attempt to rehash the arguments regarding Mr. Noble is to no avail. Plaintiffs have raised a

genuine issue of fact regarding whether Mr. Noble was personally involved in the violation of

their Fourth Amendment right.

       Defendants also argue that there is insufficient evidence of the personal

involvement of Mr. Noble's predecessor, Mr. Love. The Court found that this presented a

genuine issue of material fact as follows:

> There is some evidence that Mr. Love was involved in the decision
> to seize Plaintiffs' documents. *See* Pls.' Opp'n, Ex. 10 (Ford Aff.
> ¶ 20) (In May 2002, "Mr. Love instructed me to "find a way" to
> stop work at #20 9th Street, N.E. and force Mr. Robbins and Ms.
> Elkins to go back to the Office of Historic Preservation for re-
> approval of their work."); *id.*, Ex. 2 (email dated 10/28/02 from
> counsel to Mr. Love and others regarding topics for Oct. 29, 2002

meeting such as what "additional info" was needed and what "steps" to take next). Thus, there is an issue of fact regarding Mr. Love's potential liability for damages.

*Id*. at 19. Defendants argue now that the Ford Affidavit refers only to the revocation of the permits and not to the seizure of documents and should be given little weight. Weighing the evidence is for the jury, not the Court, as is the interpretation of Mr. Ford's testimony. Plaintiffs have presented an issue of fact regarding Mr. Love's personal involvement.

Defendants do not argue that Ms. Cherry was not personally involved in the unconstitutional seizure. After all, she accompanied the District's attorney to Superior Court to apply for the warrant, she was present at the search, and she actually seized documents. Instead, they argue that she cannot be liable in the first place because she acted pursuant to a valid search warrant when she seized evidence in plain view, and because Plaintiffs consented to turning over the documents. The Court already held that Defendants are collaterally estopped from relitigating the finding by the Hearing Officer that the seizure of the documents was not constitutionally permissible. *See Elkins*, 527 F. Supp. 2d at 46-47. And the Hearing Officer found that the plain view and consent exceptions to the warrant requirement did not apply because officers opened furniture drawers in order to obtain documents and they seized the documents without consent. Pls.' Opp'n [Dkt. # 80], Ex. 7 (OAH Order on Mot. to Suppress at 15 & 21). Reconsideration will be denied with regard to Ms. Cherry.

## IV.  CONCLUSION

For the reasons explained above, Defendants' motion for partial reconsideration [Dkt. # 85] will be granted in part and denied in part as follows: The Court's April 27, 2009 Opinion is clarified as described herein. Further, the motion for reconsideration will be granted

in favor of David Maloney because Plaintiffs have failed to present more than a scintilla of

evidence demonstrating his personal involvement in the unconstitutional seizure.  Mr. Maloney

will be dismissed as a defendant in this case.  The motion for reconsideration will be denied in all

other respects.  A memorializing order accompanies this Memorandum Opinion.


Date: July 20, 2009                                         _____/s/_____
                                                            ROSEMARY M. COLLYER
                                                            United States District Judge