# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LAURA ELKINS, *et al.*, | ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )     Civil Action No. 04-480 (RMC) <br> ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OPINION

This case concerns the seizure of documents at the home of Laura Elkins and John Robbins pursuant to a search warrant that authorized only a search of the home. The parties have litigated the legality of both the search and the seizure of documents since 2004, and this Court held that the search was valid, but that Plaintiffs' Fourth Amendment rights were violated due to the unreasonable seizure of documents. Trial was scheduled for April 2010 to determine whether Plaintiffs were entitled to compensatory and/or punitive damages. However, at the pretrial conference on March 8, 2010, Plaintiffs moved for entry of judgment for nominal damages against the remaining defendants (Toni Williams-Cherry, Denzil Noble, and Gregory Love) in furtherance of Plaintiffs' plan to appeal this Court's ruling that the search was valid.[1] Plaintiffs believe that their claim that Defendants conducted an illegal search of their home supports compensatory and punitive damages. As explained below, Plaintiffs' motion for entry of judgment will be granted in part and judgment for nominal damages will be entered against Toni Williams-Cherry and Denzil Noble.

---

[1] *See* Tr. Mar. 8, 2010 at 2-3, 6-7.

Gregory Love will be dismissed as a defendant.

## I. FACTS[2]

Plaintiffs obtained building permits and approvals from the D.C. Historic Preservation Office and the Building and Land Regulation Administration of the D.C. Department of Consumer and Regulatory Affairs ("DCRA") for construction at their historic home on Capitol Hill. After construction began, city officials believed that Plaintiffs were building in violation of their permits, and they obtained a warrant to conduct a search of Plaintiffs' home in order to find evidence of illegal construction. The officers inspected the residence and took photos. Also, although the warrant did not authorize it, officials seized certain documents during the search.

In the context of proceedings on the District of Columbia's notice to Plaintiffs of proposed revocation of the building permits, Plaintiffs and the District litigated the legality of both the search and seizure before the D.C. Office of Administrative Hearings ("OAH"). On November 22, 2005, the Hearing Officer found that while the search was valid, the seizure of documents was not constitutionally permissible because it was not expressly authorized by the search warrant, citing *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). *See* Pls.' Mot. for Partial Summ. J. [Dkt. # 42], Ex. 21 ("OAH Order on Mot. to Suppress") at 13-16, 21. This Court held that collateral estoppel precluded the relitigation of these issues and thus that Plaintiffs' Fourth Amendment rights were violated due to the unreasonable seizure of documents. *See Elkins I*, 527 F. Supp. 2d at 46. This Court explained:

> The collateral estoppel doctrine applies to Plaintiffs' Fourth
> Amendment claim because the parties have already litigated and

---

[2] More detailed facts are set forth in *Elkins v. District of Columbia*, 527 F. Supp. 2d 36, 46 (D.D.C. 2007) ("*Elkins I*").

OAH has already decided, without appeal, the question of the legality of the search of the Property and the seizure of documents. Plaintiffs contend that their Fourth Amendment right to be free from unreasonable search and seizure was violated when Defendants conducted an administrative search of their Property and seized documents. In support of their motion to suppress, Plaintiffs litigated this very issue before OAH. After an evidentiary hearing on the issue, the Hearing Officer held that the search was reasonable as it was based on probable cause, but that the seizure of documents was not reasonable. The Fourth Amendment provides "no warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched and the persons or things to be seized." *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (warrant itself must particularly describe the things to be seized). Because the warrant did not specify any documents to be seized, the seizure of the documents was outside the scope of the warrant and in violation of Plaintiffs' Fourth Amendment rights.

Defendants argue that they had probable cause to seize physical evidence that they found when searching Plaintiffs' home, citing *Texas v. Brown*, 460 U.S. 730, 742 (1983) (probable cause "merely requires that the facts available to the officer would warrant a [person] of reasonable caution in the belief that certain items may be . . . useful as evidence.") As explained above, OAH found that the District had probable cause to search the property. Further, with regard to the seizure, the critical issue was not whether there was probable cause to seize evidence. The issue was whether the warrant was properly "particularized," which it was not.

Defendants do not address Plaintiffs' claim that the seizure was invalid because the warrant was not particularized; thus, this issue is conceded. *See FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (on summary judgment, a court may treat those arguments that the plaintiff failed to address as conceded); LCvR 7.1(b) (same). . . .

In sum, Defendants are correct that Plaintiffs are collaterally estopped from asserting liability based on the alleged unreasonable search, as that matter was litigated and decided in Defendants' favor. Further, Plaintiffs are correct that Defendants are estopped from contesting liability based on the unreasonable seizure, as that issue was litigated and decided in Plaintiffs' favor.

*Id.* at 45-46.

Subsequently, this Court determined that Plaintiffs are entitled to recover nominal damages for the unconstitutional seizure and at trial they might recover compensatory and/or punitive damages caused by the document seizure alone. *Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 63-64 (D.D.C. 2009) ("*Elkins II*").[3] This Court clarified in a later opinion that "Plaintiffs may not proceed on any claim for damages caused by actions other than the seizure alone, for example, on any claim for damages caused by the search of their home including the entering of children's rooms and the opening of drawers, damages caused by the permit revocation proceeding, damages caused by the April 24, 2002 stop-work order, or damages caused by any other stop-work order." *Elkins v. District of Columbia*, 636 F. Supp. 29, 32 (D.D.C. 2009) ("*Elkins III*").[4]

Plaintiffs sought reconsideration of both *Elkins I* and *Elkins III*, and reconsideration was denied. *See Elkins v. District of Columbia*, Civ. Action No. 04-480, 2010 WL 517410 (D.D.C. Feb. 12, 2010) (*Elkins IV*). In *Elkins IV*, the Plaintiffs argued that this Court should not have applied collateral estoppel in *Elkins I* because the underlying decision of the Hearing Officer was patently erroneous. *See Winder v. Erste*, 511 F. Supp. 2d 160, 176 (D.D.C. 2007) (refusing to apply collateral estoppel due to manifest error in underlying administrative proceeding), *aff'd in part and rev'd in part on other grounds*, 566 F.3d 209 (D.C. Cir. 2009). The Hearing Officer relied on *Groh*, 540 U.S. at 558, in finding that the seizure of documents was not constitutionally permissible

---

[3] *Elkins II* also dismissed the District of Columbia as a defendant in this case. 610 F. Supp. 2d at 59.

[4] *Elkins III* also dismissed as a defendant David Maloney, an Officer with D.C.'s Historic Preservation Office, due to Plaintiffs' failure to present any evidence that Mr. Maloney was involved in the illegal seizure. 636 F. Supp. 2d at 33-34.

because the seizure was not expressly authorized by the warrant. Under *Groh*, a search warrant's lack of particularity regarding the items to be seized caused the Supreme Court to find that the warrant was invalid in its entirety. *Id*. Plaintiffs argued that the warrant at issue here should have been found to be similarly invalid in its entirety, and thus Plaintiff should be permitted to pursue damages caused by the search of their home.

This Court rejected Plaintiffs' argument, explaining that Plaintiffs overstated *Groh*'s application to this case:

> In *Groh*, a Bureau of Alcohol, Tobacco, and Firearms agent applied for a search warrant indicating that he believed that various automatic weapons and explosive devices existed on the Ramirez ranch. The agent presented the application with a detailed affidavit and a form warrant to a magistrate, and the magistrate signed the warrant form. The problem was that in the part of the warrant form that asked for a description of the person or property to be seized, the agent typed in a description of the house and not a description of the firearms. The warrant described the property to be seized as a "single dwelling residence . . . blue in color," and it did not incorporate by reference the itemized list of firearms that was part of the warrant application. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. Amd. IV; *see Michigan v. Clifford*, 464 U.S. 287, 294-98 (1984) (the object of the search determines the type of warrant required and the scope of the permissible search). In light of the Fourth Amendment's unambiguous requirement that a warrant must describe the "things to be seized" with particularity, the Supreme Court in *Groh* found that the warrant that failed to describe any item to be seized was so "obviously deficient that [the Court] must regard the search as 'warrantless.'" *Id*. at 559.
>
> Plaintiffs argue that the search warrant here, like the one in *Groh*, did not describe the items to be seized at all and thus that the warrant was so lacking in particularity that the Hearing Officer should have found that the warrant was invalid. Plaintiffs overstate *Groh*'s limited application to this case. In *Groh*, the officers were investigating firearms violations but they failed to obtain a warrant to

search for and seize firearms. Instead, they conducted a search pursuant to a warrant that did not authorize the seizure of anything other than the house where the items were located. In the instant matter, the officers were investigating construction code violations, but they failed to obtain a warrant that permitted the seizure of relevant documents, such as blue prints and construction invoices. However, the warrant did accurately describe Plaintiffs' home by its street address and it did expressly authorize the search for construction code violations. Such code violations could be discovered by viewing the property inside and outside. The officers inspected the home and took photos of the construction as permitted by the terms of the warrant.

More specifically, Denzil Noble, then Acting Administrator of the Building and Land Use Administration of the DCRA, applied for a warrant to search Plaintiffs' home for evidence of construction code violations. A judge of the D.C. Superior Court found probable cause and issued a warrant. The warrant stated that the DCRA had "probable cause to believe that on the . . . premises . . . known as 20 9th Street, N.E. Wash[ington] D.C. . . . , there is now being concealed certain property, namely unlicenced construction work" and the warrant authorized a search for the same. Defs.' Mot. to Dismiss [Dkt. # 7], Ex. 10 (Search Warrant). Because the warrant specifically referenced the subject property and because the purpose of the warrant was to search for construction code violations, the warrant was sufficiently specific to cover an inspection of the property and the taking of photos. The Hearing Officer found that the warrant was based on probable cause, suppressed the items seized during the inspection, and refused to suppress the photos and testimony regarding the inspection:

> I must suppress the admission of all items seized by the Government during its inspection. I am excluding the following items listed in the warrant return: electrical approvals, plumbing approvals/permits; construction approval permits; assorted documents including receipts and contract documents; assorted invoices; the notebook; and estimates.
>
> Because the warrant validly authorized the search of the premises, I am not suppressing the following evidence: testimony of officials as to their observations of the interior areas of the Property;

> reports regarding such observations; and photographs taken by officials of the interior areas of the Property. To the extent that such evidence also refers to the items illegally seized from the Property, the evidence shall be redacted before it can be admitted.
>
> OAH Order on Mot. to Suppress at 21.
>
> By suppressing the documents seized but not the testimony of the inspectors or the photographs, the Hearing Officer followed the doctrine of severability, separately considering evidence obtained from the illegal seizure versus the valid search. "In accordance with the purposes underlying the warrant requirement and the exclusionary rule, every federal court to consider the issue has adopted the doctrine of severance, whereby valid portions of a warrant are severed from the invalid portions and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible." *United States v. Sells*, 463 F.3d 1148, 1154-55 (10th Cir. 2006); *see also id*. at n.1 (all federal circuits follow the doctrine of severability, though courts refer to it by different terms — severability, severance, redaction, or partial suppression) (citing *In re Search Warrant Dated July 4, 1977*, 667 F.2d 117, 133 (D.C. Cir. 1981), *abrogated on other grounds*, Horton v. California, 696 U.S. 128 (1990)).

*Elkins IV*, 2010 WL 517410, at *3-4.

Plaintiffs also argued in *Elkins IV* that the OAH decision was an incidental evidentiary ruling unnecessary to the administrative decision on the merits and thus not entitled to preclusive effect. This Court found that this argument was disingenuous because:

> Plaintiffs specifically raised the issue of the constitutionality of the search and seizure by moving to suppress evidence in the OAH proceedings, and the OAH issued a 24 page decision on the motion. *See* OAH Order on Mot. to Suppress. That decision designated what evidence the Hearing Officer could and could not rely upon in deciding whether to grant the District's petition to revoke Plaintiffs' building permits. The OAH decision on Plaintiffs' motion to suppress was necessarily decided and it was critical to the OAH decision on the merits. It cannot be characterized as merely "incidental."

*Elkins IV*, 2010 WL 517410, at * 4.[5]

The remaining Defendants are Denzil Noble, the Administrator of the DCRA Building and Land Regulation Administration ("BLRA"); Toni Williams-Cherry, an employee of D.C. Historic Preservation Office and contract worker for DCRA; and Gregory Love, former BLRA Administrator. Recognizing that any case they may have for compensatory or punitive damages of any real value lies with their claim that the search itself was unconstitutional, Plaintiffs seek entry of judgment –- against Defendants Noble, Cherry, and Love — for nominal damages on their remaining claim for damages due to an unconstitutional seizure.[6] A final judgment will enable Plaintiffs to appeal this Court's rulings regarding the constitutionality of the search.

## II. STANDARD OF REVIEW

Plaintiffs' request for entry of judgment is reviewed under the standard for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails

---

[5] *Elkins IV* also denied Plaintiffs' request to reinstate David Maloney as a defendant in this case. *See Elkins IV*, 2010 WL 517410, at * 5-6.

[6] Plaintiffs moved for entry of judgment on the record on March 8, 2010. Defendants filed an opposition on March 15, and Plaintiffs replied on March 22. *See* Defs.' Opp'n [Dkt. # 112] & Pls.' Reply [Dkt. # 113].

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### A. Mr. Love

Defendants previously moved for summary judgment, seeking the dismissal of Mr.

Love by arguing that there was insufficient evidence of his personal involvement in the illegal seizure of Plaintiffs' documents. *See* Defs.' Mot. for Summ. J. ["Dkt. # 79"].[7] This Court denied Defendants' motion with regard to Mr. Love, as Plaintiffs proffered two pieces of evidence in support of the allegation that Mr. Love was involved in the decision to seize Plaintiffs' documents. *See Elkins II*, 610 F. Supp. 2d at 65, *recons. denied*, *Elkins III*, 636 F. Supp. 2d at 34-35. Vincent Ford, a BLRA supervisory inspector, stated in an affidavit that in May 2002 "Mr. Love instructed me to "find a way" to stop work at #20 9th Street, N.E. and force Mr. Robbins and Ms. Elkins to go back to the Office of Historic Preservation for re-approval of their work." Pls.' Opp'n ["Dkt. # 80"], Ex. 10 (Ford Aff.) ¶ 20. Also, an email dated October 28, 2002 from D.C. counsel to Mr. Love and others asked what "additional info" was needed and what "steps" should be taken next regarding Plaintiffs' building permits. Dkt. 80, Ex. 2 (Oct. 28, 2002 email).

Plaintiffs now have decided, as a matter of common sense and raw economics, that the possible recovery after a full trial limited to damages for the seizure of documents alone would not be worth the candle. However, the case that Mr. Love was personally involved in the seizure is decidedly thin, and while enough to get it to a jury, grossly insufficient to win on summary judgment. Mr. Ford's statement that Mr. Love instructed me to "'find a way' to stop work" may well refer only to the revocation of Plaintiffs' building permits and not the seizure of documents. And the email reference to a meeting about gathering information and what steps to take next is too vague to conclusively establish that Mr. Love was personally involved in the seizure of Plaintiffs' documents. To succeed on summary judgment against Mr. Love, Plaintiffs have to establish that Mr. Love was

---

[7] Public officials are not vicariously liable for the actions of their subordinates; respondeat superior liability does not apply in civil rights cases under 43 U.S.C. § 1983. *Haynesworth v. Miller*, 820 F.2d 1245, 1259 (D.C. Cir. 1987).

personally involved with the illegal seizure of their documents. This they have not accomplished, and thus their motion for entry of judgment against Mr. Love will be denied. Ordinarily, denial of Plaintiffs' motion would result in a trial. However, Plaintiffs do not seek a trial for compensatory and punitive damages on their claim that their documents were seized in violation of the Fourth Amendment.[8] Therefore, instead of proceeding to trial, Plaintiffs' claim against Mr. Love will be dismissed.

### B. Collateral Estoppel and Judgment Against Ms. Cherry and Mr. Noble

Plaintiffs' motion for entry of judgment for nominal damages is premised on this Court's prior finding that the OAH decision should be given collateral estoppel effect — that "Defendants are estopped from contesting liability based on the unreasonable seizure, as that issue was litigated and decided in Plaintiffs' favor." *Elkins I*, 527 F. Supp. 2d at 46. Defendants Noble and Cherry now for the first time assert that they are not bound by collateral estoppel because they were not parties to the OAH proceeding.

Under the doctrine of collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Collateral estoppel applies when (1) the issue at stake is identical to the one alleged in the prior litigation; (2) the issue was actually litigated in the prior litigation; (3) the determination of the issue

---

[8] *See* Tr. Mar. 8, 2010 at 3 (Mr. Marzulla: [W]e have stipulated as a matter of . . . fact and law that the damages for the seizure of documents are nominal, both sides have said that."); *id*. at 6-7 ("COURT: [Plaintiffs are] seeking only nominal damages in order to get to the judgment so that [they] can then, I presume, appeal on the more substantive parts of the case which are at the moment not available for trial. . . . Mr. Marzulla: . . . You've correctly stated our position.").

in the prior litigation was a critical and necessary part of the judgment in the earlier action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998); *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). Collateral estoppel can be invoked by a stranger to the prior action against a party to that prior action, as the Supreme Court "has virtually eliminated the mutuality requirement for collateral estoppel." *Novak*, 703 F.2d at 1309 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-28 (1979) and *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 320-27 (1971)). The doctrine "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane*, 439 U.S. at 329. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple law suits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987).

The OAH proceeding adjudicated the District's December 17, 2003 proposed revocation of building permits and Plaintiffs' objections to the proposed revocation; only the District of Columbia and Plaintiffs were parties to the administrative proceeding.[9] Mr. Noble and Ms. Cherry can invoke collateral estoppel against Plaintiffs with regard to issues that were actually litigated and necessarily decided by the OAH — such as the OAH finding that the search of Plaintiffs' home was valid because it was conducted pursuant to a warrant based on probable cause. However, because Mr. Noble and Ms. Cherry were not parties to the OAH proceeding, Plaintiffs

---

[9] Factual findings by D.C.'s administrative agencies acting in a judicial capacity are entitled to preclusive effect, so long as the proceeding was "the essential equivalent of a judicial proceeding." *Winder v. Erste*, 511 F. Supp. 2d 160, 176 (D.D.C. 2007).

cannot invoke collateral estoppel against them.[10]

Even so, the facts supporting liability for nominal damages on Plaintiffs' Fourth Amendment claim are clear and uncontested. Nominal damages can be awarded for the deprivation of a constitutional right without proof of actual injury, but substantial damages can be awarded only to compensate for actual injury. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (awarding nominal damages for a due process violation even though no injury was proven); *see also Memphis*, 477 U.S. at 308 n.11 (nominal damages are permissible under 42 U.S.C. § 1983). "The term 'nominal damages' means a trivial sum – usually one cent or one dollar — awarded to a plaintiff whose legal right has been technically violated but who has proved no real [pecuniary] damage." *Abrams v. Comm. Workers of Am.*, 23 F. Supp. 2d 47, 51 (D.D.C. 1998) (quoting *Chesapeake & Potomac Tel. Co. v. Clay*, 194 F.2d 888, 890 (D.C. Cir. 1952)).

The District of Columbia seized documents in the course of executing a search warrant and the warrant did not authorize the seizure. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. Amd. IV; *see Michigan v. Clifford*, 464 U.S. 287, 294-98 (1984) (the object of the search determines the type

---

[10] Mr. Noble and Ms. Cherry also argue that they were not in "privity" with the District of Columbia because government employees sued in their individual capacities generally are not in privity with either their government employer or with themselves in their official capacity. *See Andrews v. Daw*, 201 F.3d 521, 525(4th Cir. 2000)*; Morgan v. City of Rawlins*, 792 F.2d 972, 980 (10th Cir. 1986); *Johnson v. District of Columbia*, Civ. No. 04-936, 2005 WL 1903551, *6 (D.D.C. July 20, 2005). "Privity" is a concept that applies to res judicata, not collateral estoppel. The doctrines are frequently confused, as often the term res judicata is used to cover both doctrines. *Novak*, 703 F.2d at 1309. Res judicata applies only to parties or their privies. *Id*. Collateral estoppel, in contrast, can be invoked by a someone who was not a party to the prior action against a party to that action. *Id*.

of warrant required and the scope of the permissible search). No defendant here has ever challenged Plaintiffs' claim that the seizure was invalid because the warrant was not particularized. Thus, in *Elkins I*, this Court found that the issue was conceded. 527 F. Supp. 2d at 45-46 (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (on summary judgment, a court may treat those arguments that the plaintiff failed to address as conceded).

Further, Mr. Noble and Ms. Cherry have never disputed that Plaintiffs' Fourth Amendment right to be free from an unreasonable seizure was clearly established and they have never moved for summary judgment based on qualified immunity. *See Wilson v. Layne*, 526 U.S. 601, 609 (1999) (qualified immunity shields a government official from liability under § 1983 provided that the official's conduct did not violate a clearly established constitutional right of which a reasonable person would have known); *LeClair v. Hart*, 800 F.2d 692, 696 (7th Cir. 1986) (IRS agents who seized documents outside the scope of a search warrant were not entitled to qualified immunity because the plaintiffs' Fourth Amendment right to be free from unreasonable seizure was clearly established).

Mr. Noble argued earlier that he was not personally involved in the illegal seizure and thus he cannot be held liable for the Fourth Amendment violation. *See* Dkt. # 79. However, Mr. Noble signed the application for the warrant that did not authorize any seizure. A prior draft of the search warrant affidavit written for Mr. Noble's signature included a request that the warrant authorize the seizure of documents. The draft stated, "Affiant further requests that the administrative search warrant also authorize the seizure of documentary and other materials that evidence any violation of the Stop Work Order." Dkt. # 80, Ex. 13 (draft affidavit); *see also* Dkt. # 79, Ex. 14 (Moy Dep. 31) (testifying that an earlier draft of the warrant application included a request to seize

documents). Although in one portion of his deposition Mr. Noble stated that the purpose of the search warrant was only to inspect the property, *see id.*, Ex. 9 (Noble Dep. 64), he also admitted that one of the purposes of the search warrant was to seize documents. *Id.*, Noble Dep. 62. These facts alone establish Mr. Noble's personal involvement with the seizure.

Ms. Cherry has never contested her personal involvement in the document seizure. She accompanied the District of Columbia's attorney to Superior Court to apply for the warrant, she was present at the search of Plaintiffs' home, and she actually seized the documents in question. Dkt. # 80, Ex. 6 (Cherry Dep. 41, 204). Her personal involvement with the seizure is well-established. Ms. Cherry previously argued that she is not liable because she seized evidence in plain view and because Plaintiffs consented to turning over the documents. This Court held in *Elkins II* and *Elkins III* that Defendants are collaterally estopped from relitigating the finding by the Hearing Officer that the plain view and consent exceptions to the warrant requirement did not apply. *See Elkins II*, 610 F. Supp. 2d at 64 n.10; *Elkins III*, 636 F. Supp. 2d at 35 (citing OAH Order on Mot. to Suppress at 15, 21). Even if collateral estoppel does not apply, this Court would reach the same conclusion that the Hearing Officer reached. Documents recovered from inside drawers were not in "plain view." Further, there is no legal support for Defendants' claim that obtaining a building permit for a private home constitutes "implied consent" to search for a review of construction work. *See* OAH Order on Mot. to Suppress at 16. Also, although Ms. Cherry asserts that Ms. Elkins voluntarily turned over the documents, the circumstances of the search belie this allegation. "When a person in her home faces a large number of officials who are disturbing her personal property, and some of the officials are armed, one must conclude that any surrender of documents constitutes acquiescence and not voluntary action." *Id.* at 15.

In sum, while the search warrant was valid, it cannot be disputed that the seizure itself was a violation of Plaintiffs' Fourth Amendment rights. Ms. Cherry was the officer who seized the documents, and Mr. Noble was the official who signed the search warrant application that failed to seek authorization for seizure of documents, knowing that one of the purposes of the search was to seize documents. Their personal involvement in the Fourth Amendment violation has been established. By moving for entry of judgment of nominal damages, Plaintiffs have conceded that nominal damages are sufficient with regard to the illegal seizure. Accordingly, judgment will be granted in favor of Plaintiffs against Ms. Cherry and Mr. Noble, and nominal damages in the amount of one dollar each will be awarded against them.

## IV. CONCLUSION

For the reasons explained above, Plaintiffs' motion for entry of judgment will be granted in part and denied in part as follows: Plaintiffs' motion for entry of judgment against Mr. Love will be denied and he will be dismissed from this case. Judgment for nominal damages in the amount of one dollar each will be entered against Mr. Noble and Ms. Cherry. A memorializing Order accompanies this Memorandum Opinion.

Date: May 3, 2010         /s/
                          ROSEMARY M. COLLYER
                          United States District Judge